## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

No. 2014-5076

Jacqueline R. Sims, LLC,

Plaintiff-Appellant,

v.

United States,

Defendant-Appellee.

**Appeal from the U. S. Court of Federal Claims in No. 1:13-cv-00196-EJD Judge Edward J. Damich.**

## PRINCIPAL BRIEF OF PLAINTIFF -APPELLANT JACQUELINE R. SIMS, LLC

Michele Yvette Sims

Sims Law Firm
2825 Breckinridge Blvd, Suite 170
Duluth, GA 30096

Attorney for Plaintiff -Appellant,
Jacqueline R. Sims, LLC

June 17, 2014

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

Jacqueline R. Sims, LLC,  v.  United States

No. 2014-5076

## <u>CERTIFICATE OF INTEREST</u>

Counsel for the Appellant, Jacqueline R. Sims, LLC, certifies the following:

1.     The full name of every party or amicus represented by me is:

**<u>Jacqueline R. Sims, LLC</u>**

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is: **<u>None.</u>**

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are: **<u>None.</u>**

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:     **<u>Michele Yvette Sims,</u>** <u>Sims Law Firm</u>

June 17, 2014

/s/Michele Yvette Sims
**Signature of counsel**

Michele Yvette Sims
**Printed name of counsel**

i

---

# TABLE OF CONTENTS

---

CERTIFICATE OF INTEREST .............................................................................. i

TABLE OF CONTENTS ..................................................................................... ii

TABLE OF AUTHORITIES ................................................................................. iv

STATEMENT OF RELATED CASES ............................................................1

JURISDICTIONAL STATEMENT....................................................................1

STATEMENT OF THE ISSUES ......................................................................2

STATEMENT OF THE CASE ..........................................................................3

STATEMENT OF THE FACTS ........................................................................4

SUMMARY OF THE ARGUMENT ...............................................................12

ARGUMENT .....................................................................................................14

    I.     Standard Of Review ........................................................................14

    II.    The Trial Court Erred in Granting Summary Judgment for the Defendant When There Existed Genuine Issues of Material Fact……………..14

      1.  Summary Judgment Standard………………………………….....14

      2.  Disputed Genuine Issues of Material Fact…………………………..16

        a.  Plaintiff's Actions Did Not Evince an Intent to be Bound……….16

        b.  Defendant's Actions Did Not Evince and Intent to be Bound……19

      3.  When Considering Disputed Material Facts, the Trial Court Did Not Draw all Inferences in a Light Most Favorable to JRS……………..20

III.  The Trial Court Erred by Predicating its Grant of Summary Judgment on
      the Parties' Intent to be Bound to the Unenforceable Requirements
      Contracts…………………………………………………………….24

      1.  The Orders were Unilateral and Did not Ripen
          into Binding Contracts…………………………………………...26

IV.   The Trial Court Erred in its Conclusion of Law that the BOP's
      Evaluations were not Arbitrary or Capricious ..................................28

V.    The Trial Court Erroneously Applied the Bad Faith Evidentiary Standard
      to JRS's Claims that the BOP Breached the Implied Duty of Good Faith
      and Fair Dealing……………………………………………………….32

      1.  The Preponderance of the Evidence Standard Applies………….33

      2.  JRS Established that the BOP Breached the Implied Covenant of
          Good Faith and Fair Dealing…………………………………….36

VI.   The Trial Court erred by Interpreting that the Contracts' Evaluation
      Language Gave the Contracting Officer the Discretion to Prepare
      Evaluations Pursuant to FAR 42.1502……………………………38

      1.  Applicable Rules of Contract Interpretation………………………38

      2.  The Trial Court's Interpretation of the Contracts' Evaluation Language
          and the Applicability of FAR 42.1502 Was Not the Only Reasonable
          Interpretation…………………………………………………39

ORAL ARGUMENT…………………………………………………...43

CONCLUSION AND STATEMENT OF RELIEF SOUGHT. . . . . . . . . . . 44

CERTIFICATE OF FILING AND PROOF OF SERVICE . . . . . . . . . . . .  45

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . 46

ADDENDUM — THE JUDGMENT AND THE OPINION
IN QUESTION, FAR SUBPART 42.15.. . . . . . . . . . . . . . . . . . . . . . . . 47

## TABLE OF AUTHORITIES

**Cases**

*American Marine Decking Services, Inc.*, ASBCA Nos. 44440……………………16

*Am-Pro Protective Agency, Inc. v. United States*,
281 F.3d 1234, 1239-40 (Fed. Cir. 2002)……………………………………..…33

*Anderson v. Liberty Lobby, Inc., 477 U.S.* 242, 247 (1986)……………….…14, 18

*Beta Sys. v. United States*,  838 F.2d 1179, 1183 (Fed. Cir. 1988)………………43

*BLR Group of America, Inc. v. U. S.*, No. 07-579C (Dec. 16, 2010)…………...…31

*Caroline Hunt Trust Estate v. United States*,
470 F.3d 1044, 1049 (Fed. Cir. 2006)……………………………………………….23

*C. Sanchez & Son v. United States*, 6 F.3d 1539, 1542 (Fed. Cir. 1993)…........34, 43

*Celotex Corp. v. Catrett, 477 U.S.* 317, 323 (1986)………………………….…..15

*Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005)……..…33, 34

*Chas. H. Tampkins Co. v. United States*, 43 Fed. Cl. 716 (1999)………………...38

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416,
91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971)……………………………………..29

*Comptech Corp.*, ASBCA No. 55526, 08-2 BCA………………………..…….27

*Cubic Def. Sys., Inc. v. United States*, 45 Fed. Cl. 450, 457 (1999)…………..…15

*Dalton v. Cessna Aircraft Co.*, 98 F.3d 1298, 1305 (Fed. Cir. 1996)……………15

*D'Andrea Bros. LLC v. United States*, 96 Fed. Cl. 205, 222 n.24 (2010)………..34

*D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144,
1146-47 (Fed. Cir.1983)………………………………………………………16

# TABLE OF AUTHORITIES

*DODS, Inc.*, ASBCA No. 57816……………………………………………………27

*Fireman's Fund Ins. Co. v. United States*, 92 Fed. Cl. 598, 675 (2010)…………34

*Glaverbel Sociere Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1559, 33 U.S.P.Q.2d 1496, 1502 (Fed. Cir. 1995)……………………………...4

*G.L. Christian & Associates v. U.S.*, 312 F.2d 418 (Ct. Cl. 1963)……………..42

*Hometown Fin., Inc. v. U.S.*, 409 F.3d 1360, 1364 (Fed. Cir. 2005)…………...27

*Horn v. United States*, 98 Fed. Cl. 500, 504-505 (2011)……………….…..20, 25

*Howell v. United States*, 51 Fed. Cl. 516 (2002)…………………………………21

*Hunt Construction Group, Inc. v. U.S..*, 281 F.3d 1369, 1372 (Fed. Cir. 2002).....38

*Kalvar Corporation, Inc. v. U.S .*, 211 Ct. Cl. 192, 543 F.2d 1298 (1976)……....32

*Kimco Realty Corp. v. United States*, 2005-5181 (Fed. Cir. 2006)…………..…..43

*La Gloria Oil and Gas Co. v. United States*, 56 Fed. Cl. 211, 213 (2003)……....15

*Malone v. United States*, 849 F.2d 1441, 1445 (Fed. Cir. 1988)……………..…..34

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)…………………………………………….…15, 20

*Metcalf Constr. Co. v. United States*, 742 F.3d 984, 990 (Fed. Cir. 2014)……....34

*Mine Safety Appliance Co. v. Energetics Science, Inc.*, No. 75 Civ. 4925, slip op. at 3, n. 2 (S.D.N.Y., Feb. 5, 1980)……………………23

*Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987)……………………………………………………15

*Modern Sys. Tech Corp v. U.S.*, 979 F.2d 200, 205 (Fed. Cir. 1992)…16, 22, 24-25

## TABLE OF AUTHORITIES

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983)…………………..28

*Natural Resources Defense Council, Inc. v. United States EPA*,
966 F.2d 1292, 1297 (9th Cir. 1992)……………………………………………...28

*Northrop Grumman Corp. v. Goldin*, 136 F.3d 1479, 1483 (Fed. Cir. 1998)…….38

*NVT Technologies, Inc. v. U. .*, 370 F.3d 1153, 1159 (Fed. Cir. 2004)…………..38

*P.R. Burke Corp. v. United States*, 47 Fed. Cl. 340 (2000)………………………38

*Propane Indus., Inc. v. General Motors Corp.*,
429 F.Supp. 214, 219 (W.D.Mo.1977)…………………………………………....17

*Ralph Constr., Inc. v. United States*, 4 Cl.Ct. 727, 731 (1984)…………………..16

*Rivera Agredano v. United States*, 70 Fed. Cl. 564, 574 n.8 (2006)……………..34

*Road and Highway Builders, LLC v. United States*,
702 F.3d 1365, 1368 (Fed. Cir. 2012)……………………………………….…33

*Robertson & Penn, Inc. d/b/a Cusseta Laundry, Inc.*,
ASBCA No. 55625, Sept. 2008……………………………………………………...16

*Sierra Pacific Indus.*, 866 F.2d 1099, 1105 (9th Cir.1989)………………...…..28

*Tecom, Inc. v. United States*, 66 Fed. Cl. 736 (2005)……………………………35

*Todd. Construction, L.P. v. U. S.*, 656 F.3d 1306 (Fed. Cir. 2011)…………....36, 42

*Willard, Sutherland & Co. v. United States*, 262 U.S. 489 (1923)……………….20

**Statutes**

5 U.S.C. § 706(2)(A) (1988)………………………………………………....28

28 U.S.C. § 1295(a)(3)……………………………………………………..1

---

## TABLE OF AUTHORITIES

---

28 U.S.C. § 1491(a)(2)………………………………………………...14

28 U.S.C. § 1491(b)……………………………………………………….1

41 U.S.C. § 7102(a)(3)……………………………………………..…3

41 U.S.C. § 7103(a)(1)……………………………………………..…3

41 U.S.C. § 7104(b)(1)…………………………………………………...14

41 U.S.C. §§ 7101-7109……………………………………………….30

### Regulations

FAR 2.101………………………………………………………….30

FAR Subpart 9.1……………………………………………………...3

FAR 16.503(a)…………………………………………………….5

FAR Subpart 42.15………………………………………………29

FAR 42.1503 (b)(1)………………………………………29, 31, 36

FAR 52.212-4……………………………………...…………….5

FAR 52.216-21………………………………..…5, 13, 17, 19-20

FAC 05-36, September 10, 2009……………………………..…..39

### Treatises, Other Authorities

Black's Law Dictionary, 9th edition…………………………..……41

Restatement (Second) of Contracts § 235(2) .....................................25

Samuel Williston, A Treatise on the Law of Contracts (3d ed. 1961)………..43

## STATEMENT OF RELATED CASES

Pursuant to Fed. Cir. R. 47.5, counsel for Jacqueline R Sims LLC ("Plaintiff-Appellant JRS" or "JRS") is unaware of any other appeal in or from the same civil action or proceeding that previously was before this Court or any other appellate court under the same or similar title.   JRS's counsel is unaware of any other case pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

## JURISDICTIONAL STATEMENT

The United States Court of Federal Claims ("CFC") had jurisdiction over this case pursuant to 28 U.S.C. § 1491(b).  This Court has jurisdiction over this appeal under 28 U.S.C. § 1295(a)(3).  JRS timely filed its notice of appeal on April 19, 2014, within 60 days after entry of judgment in the CFC on February 26, 2014. Appellant now appeals the opinion and final judgment of the CFC.

Appended to this brief in accordance with Fed. Cir. R. 28(a)(12) are:  the Judgment entered on February 26, 2014, (A1); the Opinion and Order dated February 25, 2014, (A2-A15).  The Judgment and Order from which this appeal is taken are final, and disposes of all parties' claims.

## STATEMENT OF THE ISSUES

1.     Whether the trial court erred in granting summary judgment in favor of the United States Federal Bureau of Prisons ("BOP" or "Defendant") when there were disputed material facts.

2.     Whether the trial court erred by predicating its grant of summary judgment on erroneous conclusions of fact and law that the parties' demonstrated intent to be bound to the unenforceable requirements contracts.

3.     Whether the Past Performance Evaluations prepared by the BOP were inaccurate, arbitrary or capricious because the contracts were unenforceable and only binding to the extent actually performed.

4.     Whether the trial court erred by requiring JRS to prove "bad faith" and to meet a clear and convincing evidentiary standard (rather than a preponderance of the evidence standard ") on its claims of breach of the implied duty of good faith and fair dealing.

5.     Whether the contracts' evaluation language unambiguously gave the BOP the discretion to prepare as Source Selection Information, Past Performance Evaluations to rate Plaintiff-Appellant JRS's performance.

## STATEMENT OF THE CASE

This case arises from Final Decisions on two Contractor Claims, 41 U.S.C. § 7103(a)(1), under express Ceramics Instructor and Parenting Instructor Indefinite Delivery, Requirements Contract with an Executive Agency, 41 U.S.C. § 7102(a)(3), the BOP. This case concerns the preparation and release of inaccurate and unfair Past Performance Evaluations that have never been withdrawn from the record. The Contracts were purported to be Indefinite Delivery, Requirements contracts, but the contracts were not legally enforceable. The Past Performance Evaluations have hindered, and will continue to hinder and undermine JRS's ability to qualify for contracts of a similar nature when past performance is utilized as an evaluation factor, and/or when past performance is reviewed as a part of prospective contractor responsibility (FAR Subpart 9.1).

On March 27, 2012 and August 15, 2012, JRS submitted claims for a Final Decision pursuant to the Contracts Disputes Act. The BOP ultimately issued Final Decisions of the Contracting Officer denying the claims. Thereafter, JRS timely filed separate complaints with the CFC. The CFC consolidated the cases, and the parties filed cross motions for summary judgment. On February 26, 2014, the CFC issued an opinion denying JRS's motion for summary judgment and granting the BOP's cross-motion. (A1-A15); see *Jacqueline R. Sims LLC v. United States*, No. 13-174C; No. 13-196C (Feb. 26, 2014). This timely appeal followed.

3

## STATEMENT OF FACTS

### The Contracts

On or about August 20, 2009, pursuant to BOP Contract Number DJBP010100000005, JRS entered into an express commercial items contract with the BOP to provide a Parenting Instructor to teach the inmates incarcerated at the Federal Prison Camp in Alderson, WV parenting skills.  (A88 – A109)

On or about September 24, 2009, pursuant to BOP Contract Number DJBP010100000006, JRS entered into an express commercial items contract with the BOP to provide a Ceramics Instructor to teach the inmates incarcerated at the Federal Prison Camp in Alderson, WV the art of ceramics.  (A53 – A71)

The contracts were for a base year, and four one year option periods, and specified that an estimated quantity of sessions may be purchased.  The contracts did not require the BOP to purchase a minimum quantity of sessions, nor did the contracts require the BOP to purchase a definite quantity of sessions.  In return for providing Ceramics and Parenting Instructor services upon the issuance of written orders, the BOP agreed to pay JRS a firm fixed rate per session.  The total contract value of the Ceramics contract was estimated to be $63,180.00 for the base plus four option years.  (A55)   The total contract value of the Parenting contract was estimated to be $81,432.00 for the base plus four option years.  (A90)

4

The contracts were alleged to be Indefinite Delivery, Requirements Contracts, and services were only to be furnished upon the issuance of task orders. *See FAR 52.216-21(b).* "A requirements contract provides for filling all actual purchase requirements of designated Government activities for supplies or services during a specified contract period (from one contractor), with deliveries or performance to be scheduled by placing orders with the contractor." *FAR 16.503(a).*

The contracts included FAR 52.216-21, Requirements (Oct. 1995) Alternate I (Apr. 1984), which states, "The estimated quantities are not the total requirements of the Government activity specified in the Schedule, but are estimates of requirements in excess of the quantities that the activity may itself furnish within its own capabilities. Except as this contract otherwise provides, the Government shall order from the Contractor all of that activity's requirements for supplies and services specified in the Schedule that exceed the quantities that the activity may furnish within its own capabilities". (A60; A95)

The contracts were both commercial items contracts, and included the FAR clause at 52.212-4, Contract Terms and Conditions—Commercial Items. (A59; A94) The FAR clause 52.212-4(c), states, "Changes in the terms and conditions of this contract may be made only by written agreement of the parties."

The contracts did not contain any terms or clauses that authorized the
preparation of Past Performance Evaluations that could be released as Source
Selection Information. (A53 – A71; A88 – A109)

### Performance Evaluation FAR Provisions

Although the contracts did not authorize the preparation of Past Performance
Evaluations that could be released as Source Selection Information, FAR Subpart
42.15 addresses situations when Past Performance Evaluations may and/or are
required to be prepared.  FAR 42.1502(a) states:

> "Past Performance evaluations shall be prepared as specified in
> paragraphs (b) through (g) of this section at the time the work under
> the contract or order is completed. In addition, interim evaluations
> shall be prepared as specified by the agencies to provide current
> information for source selection purposes, for contracts or orders with
> a period of performance, including options, exceeding one year. These
> evaluations are generally for the entity, division, or unit that
> performed the contract or order. The content of the evaluations should
> be tailored to the size, content, and complexity of the contractual
> requirements."

> FAR 42.1503(b) states in part: "Copies of the evaluation, contractor
> response, and review comments, if any, shall be retained as part of the
> evaluation. These evaluations may be used to support future award
> decisions, and should therefore be marked "Source Selection
> Information."

> FAR 42.1502(b) states: "Except as provided in paragraphs I, (f) and
> (h) of this section, agencies shall prepare an evaluation of contractor
> performance for each contract that exceeds the simplified acquisition
> threshold."

6

FAR 42.1502I states: "Past Performance evaluations shall be prepared for each construction contract of $650,000 or more, and for each construction contract terminated for default regardless of contract value. Past Performance Evaluations may also be prepared for construction contracts below $650,000.

FAR 42.1502(f) states: "Past Performance evaluations shall be prepared for each architect-engineer services contract of $30,000 or more, and for each architect-engineer services contract that is terminated for default regardless of contract value.  Past Performance Evaluations may also be prepared for architect-engineer services contracts below $30,000."

FAR 2.101 states: "Simplified acquisition threshold" means $150,000, except for acquisitions of supplies or services that, as determined by the head of the agency, are to be used to support a contingency operation or to facilitate defense against or recovery from nuclear, biological, chemical, or radiological attack (41 U.S.C. 428a)….".

## Contract Performance- Ceramics Instructor

The BOP issued order number DJBP0101JS410002, dated October 15, 2009 for Ceramics Instructor services during the period of October 2009; order number DJBP0101JS410002A, dated December 15, 2009 for Ceramics Instructor services during the period of October 2009; order number DJBP0101JS410003, dated November 13, 2009 for Ceramics Instructor services during the period of November 2009; order number DJBP0101JS410004, dated December 15, 2009 for Ceramics Instructor services during the period of December1-18, 2009; and order number DJBP0101JS410005, dated Dec. 30, 2009 for Ceramics Instructor services during the period December 19, 2009 through September 30, 2010.  (A72–A81)

7

JRS did partially perform, providing some Ceramic Instructor services during the months of Oct. 2009, Nov. 2009, and Jan. 2010; the BOP received, inspected, accepted, and paid for all Ceramics Instructor services rendered.  JRS did not provide any services during December 2009, or from February 1, 2010 through September 30, 2010.  On January 24, 2011, the BOP terminated for cause the Contract for failure to perform.  (A70).  On March 23, 2011, Defendant converted the termination for cause to a termination for convenience as a result of an appeal filed by Appellant with the Civilian Board of Contract Appeals (CBCA).

### Contract Performance- Parenting Instructor

The BOP issued order number DJBP0101JG110003, dated October 14, 2009 for Parenting Instructor services during the period of October 2009; b) order number DJBP0101JG11003A, dated November 17, 2009 for Parenting Instructor services during the period of October 2009; c) order number DJBP0101JG110011, dated November 17, 2009 for Parenting Instructor services during the period of November 2009; d) order number DJBP0101JG110012, dated December 01, 2009 for Parenting Instructor services during the period of December1-18, 2009; and e) order number DJBP0101JG110017, dated December 30, 2009 for Parenting Instructor services during the period Dec. 21, 2009 through Sept. 30, 2010.  (A110 – A123)  The BOP also mailed various task orders during option year one.

8

JRS did partially perform by providing Parenting Instructor services, but did not furnish all of the services listed in the orders. The BOP received, inspected, accepted, and paid for all Parenting Instructor services rendered.

## The BOP's Past Performance Evaluation of the Ceramics Contract

The BOP prepared a Past Performance Evaluation pursuant to FAR Subpart 42.15 to assess, evaluate, and rate JRS in the areas of quality of service, timeliness of performance, business relations and customer satisfaction. (A82 – A87). The Past Performance Evaluation was marked as follows:

> "*Copies of the evaluation, contractor response, and review comments, if any, shall be retained as a part of the evaluation. These evaluations may be used to support future award decisions, and shall be therefore marked "Source Selection Information".*"

The BOP originally rated JRS as "Unsatisfactory" in the areas of quality of service, timeliness of performance, business relations and customer satisfaction, and included negative comments for the period of February 1, 2010 to September 30, 2010, a period of time when Plaintiff-Appellant JRS did not perform. After the evaluation was reviewed at a level above the Contracting Officer, the BOP Contracting Officer upgraded some of the ratings to "Poor", and "Fair", and the Contracting Officer also incorporated new and detailed negative comments.

9

The BOP's negative ratings and comments were clearly premised on the misconception that JRS was obligated to perform.

On or about February 20, 2012, the BOP released to Edna Perry-Carter, Contract Specialist for the Federal Bureau of Prisons, Field Acquisition Office, located at U. S. Armed Forces Reserve Complex, 346 Marine Forces Drive Grand Prairie, Texas 75051, Plaintiff-Appellant JRS Past Performance Evaluation covering the period of October 2009 to September 2010 (the base year of the Contract. Contract Specialist Ms. Perry-Carter utilized as Source Selection Information the Past Performance Evaluation prepared by the BOP, and determined that JRS was non-responsible with regards to a solicitation for the acquisition of Radiology Technologist services for the Federal Correctional Institution in Miami, Florida. JRS submitted the lowest price quote, and was denied the award due to the negative Past Performance Evaluation here in issue. (Answer p. 4)

## **The BOP's Past Performance Evaluation of the Parenting Contract**

The BOP prepared Past Performance Evaluations pursuant to FAR Subpart 42.15 to assess, evaluate, and rate JRS in the areas of quality of service, timeliness of performance, business relations and customer satisfaction during the base year of the contract and during option year one of the contract (A124 – A134)

10

Although the Past Performance Evaluations were not specifically marked as Source Selection Information, the evaluation for the base year of the contract was reviewed at a level above the Contracting Officer pursuant to FAR 42.15039(b), which in addition to requiring a review at a level above the Contracting Officer, also states that the evaluations may be used to support future award decisions, and should therefore be marked "Source Selection Information."

When preparing the Past Performance Evaluation for the base year parenting classes, the BOP originally rated the Plaintiff as "Good" in the area of quality of service, and rated the Plaintiff as "Fair" in the areas of timeliness of performance, business relations and customer satisfaction. The evaluation also included negative comments in the areas of timeliness of performance, business relations and customer satisfaction. After the evaluation was reviewed at a level above the Contracting Officer, the BOP Contracting Officer upgraded all the ratings to "Good", but the Contracting Officer also incorporated additional, more comprehensive negative comments.

When preparing the Past Performance Evaluation for option year one, the BOP offered negative comments in the area of timeliness of performance. Defendant's negative ratings and comments on the Past Performance Evaluations for the base year and for option year one were clearly premised on the misconception that JRS was obligated to perform.

11

## SUMMARY OF THE ARGUMENT

JRS's position is really very basic. The contracts were unenforceable at inception – a fact which the BOP admits. This means that JRS had no obligation to perform. Case law clearly settles that an unenforceable requirements contract is only definite and binding to the extent actually performed by the parties.

A contract is defined as a mutually binding legal relationship obligating the seller to furnish supplies or services and the buyer to pay for them. FAR 2.101. Since the contracts were unenforceable and only binding to the extent actually performed, during periods when JRS did not perform, no valid contract existed.

Consequently, the Defendant had no basis to evaluate JRS during periods when no contract existed. Yet, this is exactly what the BOP did, giving JRS low ratings and including negative comments in the Past Performance Evaluations for periods of time when no valid contract existed.

The trial court erred in granting summary judgment in favor of the BOP because: a) the parties lacked the requisite contractual intent; b) there were genuine issues of material fact that should have been decided in favor of JRS as the non-movant; c) there were findings of fact that were clearly erroneous; d) the incorrect evidentiary standard was applied to the claims of breach of the implied duty of good faith and fair dealing; and, e) the court's interpretation of the contracts' evaluation language was not the only reasonable interpretation.

When drafting the contract, the BOP elected to include the clause 52.216-21, Requirements (Oct. 1995) Alternate I (Apr. 1984) so that the BOP could furnish within its own capabilities the services specified in the contracts instead of utilizing JRS as an exclusive provider. Consequently, the requirements contracts lacked consideration because there was no mutuality of obligation. Moreover, the parties lacked the requisite contractual intent.

The trial court concluded as law that the contracts were unenforceable, but erred when it looked to whether the parties acted as if they intended to be bound to the contracts. In doing so, the trial court made clearly erroneous factual findings and failed to draw all inferences in a light most favorable to JRS, the non-movant.

The trial court also applied the wrong, overly strict evidentiary standard when it determined that JRS did not prove breach of the implied duty of good faith and fair dealing, and also erred by determining that JRS had to prove bad faith. In most circumstances, proof of bad faith is not required to show a breach of good faith and fair dealing, and JRS met its burden of showing that the BOP's evaluations breached the covenant of good faith and fair dealing.

On the claims that the BOP breached the contract, the trial court was barred from rendering summary judgment because the court's interpretation of the contracts' evaluation language was not the only reasonable interpretation.

13

---

## ARGUMENT

---

### I.    Standard of Review

In reviewing a final Decision of the United States Court of Federal Claims

on grant or denial of Motions for Summary Judgment under its Contract Disputes

jurisdiction, 28 U.S.C. § 1491(a)(2); 41 U.S.C. § 7104(b)(1), this Court reviews

findings of fact for clear error, and conclusions of law *de novo*, and without

deference.  *Glaverbel Sociere Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d

1550, 1559, 33 U.S.P.Q.2d 1496, 1502 (Fed. Cir. 1995) ("We give plenary review

to whether the issue was appropriately disposed of by summary judgment.").

### II.    The Trial Court Erred in Granting Summary Judgment for the Defendant When There Existed Genuine Issues of Material Fact

#### 1.   Summary Judgment Standard

Summary judgment is appropriate when there are no genuine issues of

material fact and the moving party is entitled to judgment as a matter of law.

*Anderson v. Liberty Lobby, Inc., 477 U.S.* 242, 247 (1986).  In making a

determination as to whether summary judgment is appropriate, a court does not

weigh the evidence to determine the truth of the matter, but rather whether there is

a genuine issue for trial.  Id. at 249.  The movant bears the initial burden of

establishing the absence of genuine issues of material fact. *Celotex Corp. v. Catrett, 477 U.S*. 317, 323 (1986). The nonmovant then bears the burden of showing sufficient evidence of a material fact in dispute that would allow a fact finder to decide the case in its favor. *Liberty Lobby, 477 U.S*. at 256. If such evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Liberty Lobby, 477 U.S.* at 249-50. When considering the existence of a genuine issue of material fact, a court must draw all inferences in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When considering cross-motions for summary judgment, the court evaluates each motion under the same standard. *Cubic Def. Sys., Inc. v. United States*, 45 Fed. Cl. 450, 457 (1999). Issues of contract interpretation are appropriate for summary judgment. *Dalton v. Cessna Aircraft Co*., 98 F.3d 1298, 1305 (Fed. Cir. 1996); see also *La Gloria Oil and Gas Co. v. United States*, 56 Fed. Cl. 211, 213 (2003). If genuine disputes exist over material facts, both motions must be denied. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987).

Courts must act with caution in granting summary judgment, because though it is a useful procedural tool to speed the determination of disputes in which no questions of material fact exist, an erroneous grant of summary judgment may

15

deny a party its chance to prove its case at trial. *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1146-47 (Fed. Cir.1983). Likewise, an "improvident denial" of summary judgment may force the parties and the court to bear the expense of an unnecessary trial. Id.

### 2. Disputed Genuine Issues of Material Fact

#### a. Plaintiff's Actions Did Not Evince an Intent to be Bound to the Unenforceable Requirements Contracts

When using a requirements contract, the Government is required to order all of its requirements from the contractor, but is under no obligation to actually have requirements, as long as the absence of requirements is in good faith. *Robertson & Penn, Inc. d/b/a Cusseta Laundry, Inc.* ASBCA No. 55625, September 2008; *American Marine Decking Services, Inc.*, ASBCA Nos. 44440 et al., 97-1 BCA ¶ 28,821. The promise by the buyer to purchase all of its requirements from the seller, together with the seller's obligation to fill all of the buyer's need constitutes consideration and mutuality of obligation.

An enforceable requirements contract is formed when the seller has the exclusive right and legal obligation to fill all of the buyer's needs for the goods and services described in the contract. *Modern Sys. Tech Corp v. United States*, 979 F.2d 200, 205 (Fed. Cir. 1992); *Ralph Constr., Inc. v. United States*, 4 Cl.Ct. 727, 731 (1984). Thus, an essential element of a requirements contract is the promise

by the buyer to purchase the subject matter of the contract exclusively from the seller. *Propane Indus., Inc. v. General Motors Corp*., 429 F.Supp. 214, 219 (W.D.Mo.1977).

JRS alleged in both its original and amended complaints that the contracts at issue were not enforceable requirements contracts, and were only binding to the extent actually performed due to the inclusion of the clause 52.216-21, Requirements (Oct. 1995) Alternate I (Apr. 1984), which permitted the BOP to furnish within its own capabilities the services specified in the contracts instead of utilizing JRS as an exclusive provider. (A60; A95) In its answer to the original complaint, the BOP averred that the contracts contained the clause 52.216-21. (Answer p. 5, 14)

JRS also alleged in its amended complaint that the BOP actually utilized agency resources and alternative resources to achieve contract requirements. (A44) The BOP did not answer the amended complaint and based on the pleadings, it was believed that there were no genuine issues of material fact. By order of the trial court, the parties filed cross motions for summary judgment that were due by September 26, 2013. (A17)

However, in its cross motion for summary judgment, the BOP raised for the first time the claim that despite the infirmities in the formation of the contracts, the parties established implied-in-fact contracts, and the BOP also made a factual

allegation that at all times, the parties acted as if there was mutuality of intent to be bound.  (Defendant's Cross Motion for Summary Judgment p.19)  Specifically, the BOP noted that the Government issued task orders, JRS performed under those orders, and the Government paid for the services rendered.

JRS disputed the factual allegation that the parties acted at all times as if there was mutuality of intent to be bound, and provided sufficient evidence to prove that the factual dispute was genuine.  (Appellant's Opposition to Summary Judgment p. 13-15)  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 252 (1986) ("that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury reasonably could find for the plaintiff").

Since a requirements contract imposes a legal obligation on a Contractor to fill all of the buyer's needs for services, if JRS had acted as if it was bound to the contracts, JRS would have filled all of the BOP's requests for services.  The record demonstrates that JRS did not assent to fulfill all of the BOP's orders for services, and in fact only fulfilled a small portion of the requested services.

The trial court made clearly erroneous findings of fact that JRS acted as if it intended to be bound to the contracts, and for a period of time performed exactly as called for by the contracts.  (A13)  JRS never acted as if bound to perform, and at

18

no time did JRS perform exactly as prescribed by the contracts. Therefore, the trial court erred in its conclusion of law on the claim of breach of the implied covenant of good faith and fair dealing.

### b. Defendant's Actions Did Not Evince an Intent to be Bound to the Unenforceable Requirements Contracts

In its cross motion for summary judgment, the BOP claimed for the first time that the agency never fulfilled its needs from in-house sources. (Defendant's Cross Motion for Summary Judgment p. 10) However, in its pleading, the BOP did not deny the allegation of utilizing agency and alternative resources. Thus, the BOP should be deemed to have admitted this allegation, and should have been precluded from arguing that the agency only utilized the services of JRS to fulfill its needs. Nonetheless, JRS offered more than a scintilla of evidence that the BOP had in fact utilized agency and alternative resources to fulfill its needs on the Parenting contract. (Appellant's Opposition to Summary Judgment p. 13)

Since an essential element of a requirements contract is the promise by the buyer to purchase the subject matter of the contract exclusively from the seller, if the BOP had acted as if bound to the contracts, the BOP would have only utilized JRS to fulfill its needs.

The record demonstrates that the BOP never intended to be bound to the contracts as if they were enforceable requirements contracts. The BOP included in

the contracts the clause 52.216-21, Requirements (Oct. 1995) Alternate I (Apr. 1984), which permitted the BOP to fulfill its needs in-house, and the BOP did in fact fulfill its needs in-house, as well as via the use of alternative resources.

The trial court made a clearly erroneous finding of fact that the BOP acted as if it intended to be bound to the contracts. (A13) This error led the trial court to reach erroneous conclusions of law.

### 3. When Considering the Disputed Material Facts, the Trial Court Did Not Draw all Inferences in a Light Most Favorable to JRS

When considering the existence of a genuine issue of material fact, a court must draw all inferences in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.* 574, 587 (1986).

The trial court correctly determined that the contracts were not requirements contracts because they failed to make JRS the exclusive provider of services, citing to *Willard, Sutherland & Co. v. United States*, 262 U.S. 489 (1923) ("While the contract at its inception was not enforceable, it became valid and binding to the extent that it was performed."), and *Horn v. United States*, 98 Fed. Cl. 500, 504-505 (2011) (Smith, J.) (finding that FAR 52.216-21 (Oct. 1995) Alternate I (Apr. 1984) negates the exclusivity element necessary for a requirements contract).

The trial court also correctly determined that the contracts were not indefinite quantities contracts because they did not specify a guaranteed minimum

number of services to be provided, citing to *Howell v. United States*, 51 Fed. Cl. 516 (2002) (an indefinite quantities contract requires an expressly-stated minimum quantity to be enforceable).

Accordingly, the trial court concluded that the contracts were only enforceable to the extent that they were actually performed. Although the trial court correctly determined that the contracts at issue were not implied in-fact-contracts and instead were only enforceable to the extent that they were actually performed by the parties, the trial court concluded that the parties performed as if their conduct was governed by enforceable contracts. Indeed, the trial court concluded that both parties acted as if they were bound by the requirements contracts, which would have required JRS perform certain services whenever the Government requested them.

In granting summary judgment in favor of the BOP, the trial court relied heavily on disputed facts, and failed to draw all inferences in a light most favorable to JRS, the non-moving party.

JRS presented evidence that the BOP did not act as if it was governed or bound by enforceable requirements contracts. Specifically, evidence was presented that the BOP promulgated that it had utilized agency resources and alternative resources to fulfill its needs on the Parenting contract. (A126-127) Since an enforceable requirements contract requires the Government to order all of

its requirements from the contractor, *Modern Sys. Tech Corp v. United States*, 979 F.2d 200, 205 (Fed. Cir. 1992), the fact that the BOP utilized alternative resources to fill its needs evinces that the Defendant did not act as if it was governed or bound by an enforceable contract.

Additionally, JRS presented evidence that it did not act as if it was governed or bound by enforceable requirements contracts because it did not agree to, or provide all ordered services. The BOP issued orders for 437 sessions (hours) of Ceramics services for the 12 month period of October 1, 2009 through September 30, 2010. (A72–A81), and issued orders for 875 sessions (hours) of Parenting services for the base year. (A110-123) Orders for 958 session hours of Parenting services were issued for option year one.

During the 12 month ordering period for the Ceramics contract, JRS never actually received any orders, did not agree orally or in writing to provide all of the requested services, and only provided a small fraction of the Ceramic services during 3 of the 12 months. (Appellant's Opposition to Summary Judgment p. 16 )

During the base year and the first three months of option one of the Parenting contract, JRS never actually received any of the orders. JRS never agreed orally or in writing to provide all of the requested Parenting services, and only provided a portion of the ordered sessions. (Appellant's Opposition to Summary Judgment p. 16)

22

When opposing BOP's summary judgment motion, JRS presented evidence that there were genuine issues of material fact as to whether the parties' actions indicated an intent to be bound to the contracts as if they were enforceable. (Appellant's Opposition to Summary Judgment Motion pgs.15-17)

The trial court was required to draw all inferences in a light most favorable to JRS as the non-moving party, and summary judgment in favor of the Defendant was not appropriate on the claims of arbitrary and capricious Past Performance Evaluations and breach of the implied duty of good faith and fair dealing because there existed genuine issues of material fact. See, *Mine Safety Appliance Co. v. Energetics Science, Inc.*, No. 75 Civ. 4925, slip op. at 3, n. 2 (S.D.N.Y., Feb. 5, 1980) (A motion to declare an alleged agreement binding and enforceable was denied, because the court found that a question of material fact had been raised on whether the non-movants intended to be bound).

## III. The Trial Court Erred by Predicating its Grant of Summary Judgment on the Parties' Intent to be Bound to the Unenforceable Requirements Contracts.

Any intent to be bound to the contracts is a question of fact to be determined from all the circumstances of the case. Moreover, whether a contract exists is a mixed question of law and fact. *Caroline Hunt Trust Estate v. United States*, 470 F.3d 1044, 1049 (Fed. Cir. 2006).

However, once the trial court determined that the contracts were unenforceable as written and that the contracts were only enforceable to the extent performed, the Court erred by then predicating its grant of summary judgment in favor of the Defendant on the basis that the parties intended to be bound to the contracts, and that the parties allegedly performed as if their conduct was governed by enforceable requirements contracts.

Although the parties may have desired to form binding requirements contracts, the absence of mutuality of obligation means that the parties lacked the requisite contractual intent. *Modern Sys. Tech Corp v. United States,* 979 F.2d 200, 205 (Fed. Cir. 1992). The BOP did not enter into the contracts with the intent to exclusively utilize the services of JRS, and in fact, fulfilled some of its needs through alternate resources. Therefore, the contracts were unenforceable as requirements contracts because there was no mutuality of obligation.

Consequently, the question as to whether the parties intended to form binding requirements contracts or performed as if their conduct was governed by enforceable requirements contracts is of no consequence. The infirmities in the contracts rendered the contracts unenforceable, and the contracts were only enforceable and binding to the extent actually performed. Consequently, the terms and the provisions of the contracts only applied to the services that were actually rendered by JRS.

24

When a requirements contract is found to be unenforceable, it precludes the Contractor from pursuing breach of contract claims against the Government on the bases of negligent estimates and diversion because such claims relate directly to the Government's non-existent obligation to exclusively utilize the services of the Contractor. *Horn v. United States*, 07-655C, May 3, 2011; *Modern Sys. Tech Corp v. United States, 979 F.2d 200, 205 (Fed. Cir. 1992)*.

It follows that when a requirements contract is found to be unenforceable, the Government should be precluded from pursuing breach of contract claims against the Contractor on the basis of failure to perform because the Contractor is not required to provide all ordered services when the contract is unenforceable.

Although the trial court made a conclusion of law that the contracts were unenforceable, the court also concluded as a matter of law that BOP's evaluations were not arbitrary or capricious even though the evaluations included low ratings and negative comments about JRS's failure to perform that were premised solely on the BOP's misconception that the contracts were enforceable. Since a failure to perform the contracts as stated in the evaluations would be a breach of contract, the trial court effectively concluded that JRS breached the contracts. RESTATEMENT (SECOND) OF CONTRACTS § 235(2) "when performance of a duty under a contract is due any non-performance is a breach". However, such a breach for failure to perform is not possible when the contracts were not enforceable.

25

By granting summary judgment in favor of the Defendant, the trial court effectively nullified its own conclusion of law that the contracts were not enforceable and were only binding to the extent actually performed. Indeed, the contracts cannot at once be enforceable only to the extent that they were actually performed, while also being subject to breach of contract by the Contractor (for failure to provide all ordered services) or to breach of contract by the Government (for diversion or negligent estimates) as if the contracts were fully enforceable.

## 1. The Orders were Unilateral and Did not Ripen into Binding Contracts

When a requirements contract is enforceable, a Contractor is legally obligated to provide the services described in the order/s pursuant to the underlying requirements contract. Here, because the requirements contracts were not enforceable, JRS was not legally obligated to fulfill any orders for services.

Although the BOP issued orders that were signed by the Contracting Officer, JRS did not receive any orders for the Ceramics contract, and did not receive any orders for the Parenting contract until several months into option year one. Moreover, JRS was not even aware that the orders existed, and was not bound to accept the orders due to infirmities in the underlying requirements contracts.

Since the underlying contracts were unenforceable, four basic elements had to be satisfied for the orders to be binding upon JRS: (1) mutuality of intent to

26

contract i.e., a meeting of the minds regarding the provisions of the agreement; (2) offer and acceptance; (3) consideration; and (4) a Government representative having actual authority to bind the United States. *Hometown Fin., Inc. v. United States*, 409 F.3d 1360, 1364 (Fed. Cir. 2005).

None of the orders issued by the BOP established a mutually binding legal relationship that obligated JRS to furnish the requested services, and JRS did not assent to the terms of the orders. The orders did not invite acceptance via promise or by performance, the orders contained no terms or language to indicate that the BOP required or requested that JRS indicate acceptance of the orders, and JRS was not aware of the existence of the orders or privy to the terms of the orders. Moreover, JRS did not accept the orders, or communicate assent or an intention to be bound to supply all services requested by the orders.

Consequently the orders were akin to unilateral purchase orders, or offers to create option contracts. *Comptech Corp.*, ASBCA No. 55526, 08-2 BCA , 33,982 at 168,082 (Purchase orders are not accompanied by a promissory acceptance and comprise simply an offer to enter into a unilateral contract). Purchase orders have three distinct phases −(1) the offer, (2) the option contract, and (3) the completed purchase and sale contract. *DODS, Inc.*, ASBCA No. 57816. If the contractor successfully performs the contract by delivering all of the ordered services or

supplies on time a "completed purchase and sale contract" comes into existence. *Comptech*, 08-2 BCA, 33,982 at 168,083

In its motion for summary judgment, the BOP did not allege or provide any evidence to demonstrate that JRS accepted any of the orders that were issued by the BOP. JRS tendered partial performance, but did not tender full performance in accordance with the terms and conditions of the orders. Therefore, the orders were tantamount to option contracts, and none of the orders were legally binding on JRS to provide all of the requested services.

### IV.   The Trial Court Erred in its Conclusion of Law that the BOP's Evaluations were not Arbitrary or Capricious

Although there is no set standard for what is an arbitrary and capricious decision, guidance can be found in *Natural Resources Defense Council, Inc. v. United States EPA*, 966 F.2d 1292, 1297 (9th Cir. 1992). "5 U.S.C. § 706(2)(A) (1988) authorizes the court to "set aside agency action ... found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Under this standard a court must find a "rational connection between the facts found and the choice made." *Sierra Pacific Indus.*, 866 F.2d 1099, 1105 (9th Cir.1989) (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983)). The court must decide

28

whether the agency considered the relevant factors and whether there has been a clear error of judgment. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971)."

JRS's complaint alleged that the contracts were unenforceable and that JRS was not required to furnish services. JRS also alleged that the Past Performance Evaluations prepared by the Defendant to evaluate JRS were arbitrary, capricious, and erroneous because Defendant's ratings and negative comments were directly attributable to, and premised solely on the falsehood that the contracts were enforceable, and that JRS was required to furnish all ordered services.

Since the BOP elected to complete Past Performance Evaluations in accordance with FAR Subpart 42.15, the BOP was legally obligated to provide a fair and accurate assessment of JRS's performance. FAR 42.1503 (b)(1).

The evaluations were not fair or accurate because there was no rational connection between the status of the contracts as unenforceable, and the BOP's decision to assign low ratings and to incorporate negative comments. In fact, the BOP did not even consider as relevant the fact that the contracts were unenforceable when it prepared the evaluations.

Consequently, the BOP committed a clear error of judgment as the Past Performance Evaluations were not based upon the consideration of relevant factors

regarding the unenforceability of the contracts, and the fact that JRS was not obligated to provide any of the requested services.

The trial court's summary judgment decision in favor of the Defendant on the arbitrary and capricious claims was based on the Court's erroneous conclusions of fact and law. In its decision, the trial court observed:

> Even though the contracts were unenforceable, the Court does not believe that the evaluations were arbitrary or capricious, as alleged in Count III, because both parties acted for substantial periods of time as if they both intended to be bound by the contracts. Even when given the opportunity to raise this issue when it was provided with the draft evaluations, JRS failed to do so.

(A13)

As delineated in Section II of this brief, neither party acted as if enforceable requirements contracts were in place, and there is no evidence that JRS intended to be bound to the unenforceable contracts.

The second basis for the trial court's decision centers on the fact that JRS did not raise even the specter of unenforceability when submitting its October 2010 comments on the evaluations. (A13)

The Contract Disputes Act of 1978 (CDA) provides that if a contractor has a dispute with the government "relating to a contract," the contractor shall make a written claim to the contracting officer within six (6) years after the accrual of the claim. 41 U.S.C. §§ 7101-7109. Pursuant to FAR 2.101, a claim is "a written demand or written assertion by one of the contracting parties seeking, as a matter

of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to [the] contract."

The fact that JRS did not raise the issue of the unenforceability of the contracts when submitting its October 2010 comments on the Past Performance Evaluations was irrelevant, and did not preclude JRS from subsequently submitting a CDA claim pertaining to the unenforceability of the contracts upon learning the basis of this claim.  JRS's comments on the Past Performance Evaluations constituted nothing more than contractor comments pursuant to FAR § 42.1503(b), which allows contractors to submit "comments, rebutting statements, or additional information" in response to performance evaluations.

Since JRS was acting within the confines of the FAR's performance evaluation procedures, it was not asserting a claim pursuant to the CDA.  *BLR Group of America, Inc. v. United States*, No. 07-579C (Dec. 16, 2010) (denies contractor's motion for partial consideration of prior decision because neither contractor's comments disagreeing with performance assessment report nor its counsel's email to the Contracting Officer attempting to convince her to withdraw or change the Government's evaluation constitute a CDA claim).

Additionally, JRS's comments were based solely on the initial Past Performance Evaluations that were prepared by the Contracting Officer's Technical Representative (COTR).  Conversely, JRS's CDA claims related to the

final Past Performance Evaluations, which included both the original evaluations that were prepared by the COTR, as well as the revised evaluations that were prepared by the Contracting Officer. Notably, the revised evaluations that were prepared by the Contracting Officer contained a substantial number of detailed, negative comments not included in the original evaluations that specifically allege that JRS failed to perform the contracts. (A83-84; A126-127)

JRS submitted proper and timely CDA claims regarding the accuracy of the Past Performance Evaluations that fully comported with the CDA's requirements and that identified substantive defects in the evaluations. The trial court pointed to no regulation, statute or case law that limits the scope of claims regarding *final* Past Performance Evaluations to comments made by Contractors in response to *initial* Past Performance Evaluations.

**V.    The Trial Court Erroneously Applied a Bad Faith Evidentiary Standard to JRS's Claims that the BOP Breached the Implied Duty of Good Faith and Fair Dealing.**

In its decision, the trial court articulated the following standard for the claims related to breach of the implied duty of good faith and fair dealing, and the arbitrary and capricious Past Performance Evaluations:

> As the Government observes here, JRS must clear a significant evidentiary hurdle in order to meet its burden. This hurdle comes in the form of the presumption that government officials act in good faith. See *Kalvar Corporation, Inc. v. United States*, 211 Ct. Cl. 192,

543 F.2d 1298, 1301-1302 (1976); see also *Road and Highway Builders, LLC v. United States*, 702 F.3d 1365, 1368 (Fed. Cir. 2012) ("We and our predecessor court, the Court of Claims, have long upheld the principle that government officials are presumed to discharge their duties in good faith."). This presumption may only be overcome by the presentation of clear and convincing evidence that the official did not discharge his or her duty in good faith. See *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1239-40 (Fed. Cir. 2002).

(A13)

Despite finding that JRS was not obligated to perform under the unenforceable contracts, the trial court relied on the evidentiary standard of clear and convincing evidence that the official did not discharge his or her duty in good faith in support of its conclusion that Plaintiff-Appellant JRS failed to prove breach of the implied duty of good faith and fair dealing. This evidentiary standard, however, should not have been applied to JRS's claims. Moreover, JRS was not required to demonstrate bad faith in order to prove it claims of breach of the implied duty of good faith and fair dealing as it related to the Past Performance Evaluations.

## 1. The Preponderance of the Evidence Standard Applies

The implied duty of good faith and fair dealing "is an implied duty that each party to a contract owes to its contracting partner." *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005). This duty imposes obligations on both

parties, including "the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." Id. This implied duty extends to the Government. Id.

In deciding whether there was a breach of this duty, the court examines the circumstances surrounding the alleged breach. *Fireman's Fund Ins. Co. v. United States*, 92 Fed. Cl. 598, 675 (2010) (citing *C. Sanchez & Son v. United States*, 6 F.3d 1539, 1542 (Fed. Cir. 1993)). Parties can show a breach of the implied duty of good faith and fair dealing by proving lack of diligence, negligence, or a failure to cooperate. See *Malone v. United States*, 849 F.2d 1441, 1445 (Fed. Cir. 1988).

Proof of "bad faith" is not required to show a breach of the implied duty of good faith and fair dealing in most cases. *D'Andrea Bros. LLC v. United States*, 96 Fed. Cl. 205, 222 n.24 (2010); see also *Centex*, 395 F.3d at 1304-06; *Rivera Agredano v. United States*, 70 Fed. Cl. 564, 574 n.8 (2006). Evidence of government intent to harm the contractor is not ordinarily required. Additionally, specific targeting designed to reappropriate the benefits [that] the other party expected to obtain from the transaction is not required to show a breach the implied duty of good faith and fair dealing, nor does such a breach require a violation of an express provision in the contract. See, *Metcalf Constr. Co. v. United States*, 742 F.3d 984, 990 (Fed. Cir. 2014)

34

Additionally, the court in *Tecom, Inc. v. United States*, 66 Fed. Cl. 736 (2005) determined that claims of a breach of the duty of good faith and fair dealing implied in contracts, unlike allegations of bad faith, do not require a heightened standard of proof and should be "treated like any other claim for breach of contract." The court set forth two important policy justifications for not applying the presumption of good faith in ordinary breach of contract actions.

Specifically, the court in *Tecom, Inc. v. United States*, 66 Fed. Cl. 736 (2005) reasoned that presuming government officials act in good faith in the performance of contractual obligations would create a conflict with the universally recognized principle that the duty of good faith and fair dealing is applied to private parties as well as the Government. Furthermore, the court explained that the "presumption of good faith conduct of government officials has no relevance" to a breach of contract case because proof of fraud or quasi-criminal wrongdoing has never been required to prove a breach of the implied covenant of good faith and fair dealing. Since fraud or quasicriminal wrongdoing is not at issue in such a claim, the court reasoned there is no concern that an official's reputation will be erroneously tarnished, which is a fundamental reason courts apply a good faith presumption and require a heightened standard of clear and convincing evidence to prove bad faith.

## 2. JRS Established that the BOP Breached the Implied Covenant of Good Faith and Fair Dealing

Performance evaluation regulations were intended to directly and significantly benefit contractors. *Todd. Construction, L.P. v. United States,* 656 F.3d 1306 (Fed. Cir. 2011). Since the BOP elected to complete Past Performance Evaluations in accordance with FAR Subpart 42.15 to rate JRS's performance, the BOP was legally obligated to provide a fair and accurate assessment of Plaintiff-Appellant JRS's performance. FAR 42.1503 (b)(1). Moreover, JRS had a reasonable expectation that any evaluations that were prepared by the BOP would provide a fair and accurate assessment of JRS's performance taking into consideration all relevant factors such as the enforceability of the contracts.

In preparing erroneous Past Performance Evaluations that included low ratings and negative comments about JRS 's performance, the BOP failed to provide JRS with fair and accurate evaluations. The evaluations were based upon the false premise that the contracts were enforceable, and that JRS was required to furnish all requested services. If the BOP had not based its evaluations on the erroneous notion that the contracts were enforceable, JRS would have received much higher ratings, and the narrative would not have included any comments.

The BOP committed gross error when evaluating JRS's performance against a standard for enforceable requirements, which would have required Plaintiff-

36

Appellant JRS to provide all services requested by the BOP. Indeed, the BOP's evaluations misstated significant facts regarding JRS's obligation to provide the requested services.

JRS provided the trial court with evidence that the contracts were not enforceable, and the trial court concurred with this assessment. Additionally, JRS provided with its complaint copies of the Past Performance Evaluations, and with great specificity identified which ratings and comments were erroneous. JRS also indicated in great detail what the outcome of the evaluations would have been if the BOP had not applied the performance standard for enforceable requirements, and instead had evaluated Plaintiff-Appellant JRS only based upon performance when the contracts were definite and binding. (A29-32; A45-48)

Proper analysis of a claim regarding the implied duty of good faith and fair dealing requires the application of the correct evidentiary standard, as well as a correct understanding of the contract. Here, the trial court applied the wrong evidentiary standard when it required JRS to meet the evidentiary standard of clear and convincing evidence, and also required JRS to prove bad faith.

The trial court also based its decision and conclusions of law on a misinterpretation of the facts as to whether the parties acted as if bound to the contracts, and as to JRS's obligation to provide the requested services.

## VI.    The Trial Court Erred by Interpreting that the Contracts' Evaluation Language Gave the Contracting Officer the Discretion to Prepare Evaluations Pursuant to FAR 42.1502

### 1.    Applicable Rules of Contract Interpretation

The fundamental objective in interpreting a contract is to "ascertain the parties' intent and effectuate the purpose of their agreement." *P.R. Burke Corp. v. United States*, 47 Fed. Cl. 340 (2000) (internal citations omitted).  When interpreting a contract, "[this Court] begin[s] with the plain language." *Hunt Construction Group, Inc. v. United States*, 281 F.3d 1369, 1372 (Fed. Cir. 2002). See also *Northrop Grumman Corp. v. Goldin*, 136 F.3d 1479, 1483 (Fed. Cir. 1998); *Chas. H. Tampkins Co. v. United States*, 43 Fed. Cl. 716 (1999) ("Whenever possible, courts look to a plain language or plain meaning interpretation of contractual documents"). "The contract must be considered as a whole and interpreted to effectuate its spirit and purpose, giving reasonable meaning to all parts." *Hunt Construction Group, Inc.,* 281 F.3dat 1372.  "An interpretation that gives meaning to all parts of the contract is to be preferred over one that leaves a portion of the contract useless, inexplicable, void, or superfluous." *NVT Technologies, Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004).

38

The Defendant averred in its Answer that the contracts contained no terms that authorized the BOP to prepare Past Performance Evaluations that could be released as Source Selection Information.  (Answer p. 3,14)   Nevertheless, in its decision, the trial court interpreted the contracts' evaluation language as providing the Contracting Officer with the discretion to prepare Past Performance Evaluations in accordance with FAR Subpart 42.15, which permitted the BOP to release the evaluations as Source Selection Information.

The decision, however, demonstrates the trial court's misunderstanding of commercial items contracts, which requires that all changes in the terms and conditions of the contract be made by written agreement of the parties.

2. **The Trial Court's Interpretation of the Contracts' Evaluation Language and the Applicability of FAR 42.1502 Was Not the Only Reasonable Interpretation**

The FAR regulations that were applicable at the time the contracts were executed were embodied in FAC 05-36, dated September 10, 2009.  The applicable regulations at FAR Subpart 42.15 per FAC 05-36 set forth the mandatory requirements for the preparation of Past Performance Evaluations for contracts that exceed, and do not exceed the simplified acquisition threshold.   (A50 – A52).  The only required evaluation factor in Subpart 42.15 pertained to the small business subcontracting plan.  (A51)

39

The contracts at issue made no mention of FAR Subpart 42.15, and did not contain a performance evaluation clause that identified performance evaluation factors or evaluation rating definitions that would be used to evaluate JRS's performance.  Additionally, the contracts did not contain any language that authorized the evaluations to be released as Source Selection Information or that stipulated that evaluations would be prepared in accordance with FAR Subpart 42.15.

As noted by the trial court, the *only* language in either contract that refers to performance evaluations is contained within the clause that describes the duties of the Contracting Officer's Technical Representative.  This clause is as follows:

**A.9 CONTRACTING OFFICER'S TECHNICAL REPRESENTATIVE (COTR) (JAR 2852.201-70) (JAN 1985)**
(a) SOE, Joy Bowling, 304-445-3300 (x5201) of FPC Alderson's Education Department, is hereby designated to act as Contracting Officer's Technical Representative (COTR) under this contract.

(b) The COTR is responsible, as applicable, for: receiving all deliverables, inspecting and accepting the supplies or services provided hereunder in accordance with the terms and conditions of this contract; providing direction to the contractor which clarifies the contract effort, fills in details or otherwise serves to accomplish the contractual Scope of Work; **evaluating performance**; and certifying all invoices/vouchers for acceptance of the supplies or services furnished for payment.

(c) The COTR does not have the authority to alter the contractor's obligations under the contract, and/or modify any of the expressed terms, conditions, specifications, or cost of the agreement.  If as a result of technical discussions it is desirable to alter/change

contractual obligations or the Scope of Work, the Contracting Officer shall issue such changes.

(A61; A97)

In granting summary judgment in favor of the BOP on the claim of breach of contract, the trial court interpreted the Contracting Officer's Technical Representative (COTR) clause as giving the Contracting Officer the discretion to evaluate JRS's performance in accordance with FAR 42.15.

The trial court's interpretation of the words "the COTR is responsible, as applicable, for: … evaluating performance", is overly broad, and is not the only reasonable interpretation of the clause.

First, the COTR clause advises that the COTR, not the Contracting Officer is responsible, as applicable, for evaluating performance. Nothing in this clause advises that the Contracting Officer would evaluate performance. This is an important distinction because the majority of negative comments contained in the Past Performance Evaluations were authored by the Contracting Officer, not the COTR. (A83-84; A126-127)

Second, the legal definition of the word "applicable" is fit, suitable, pertinent, or appropriate. *Black's Law Dictionary, 9th edition*. Since the value of the contracts did not exceed the simplified acquisition threshold, the BOP was not required to complete Past Performance Evaluations. Moreover, it was JRS's

understanding that FAR Subpart 42.15 was not applicable to the contracts because: a) FAR Subpart 42.15 was not mentioned in the contracts; b) the contracts did not exceed the simplified acquisition threshold; and, c) the contracts contained no performance evaluation factors or ratings.

The terms of FAR Subpart 42.15 should not be read into the contracts, particularly when as here, the BOP was not required by regulation to prepare Past Performance Evaluations, and the contracts did not contain any performance evaluation factors or make any reference to FAR Subpart 42.15. See *Todd Constr., L.P. v. United States*, 656 F.3d 1306, 1314 n.6 (Fed. Cir. 2011) (The government suggests that this approach improperly reads the performance evaluation regulation into the contract under *G.L. Christian & Associates v. United States*, 312 F.2d 418 (Ct. Cl. 1963), and its progeny. In holding that the Claims Court has jurisdiction under the CDA, we do not suggest that the performance evaluation regulation should be read into the contracts. Rather, the regulation applies of its own force and directly governs the parties' performance under the contracts.)

Additionally, it is not at all clear that the regulations at FAR Subpart 42.15 applied to the contracts of its own force since per the terms of the regulations, the BOP was not required to prepare evaluations that could be utilized as Source Selection Information.

Since the trial court's interpretation of the evaluation language was not the only reasonable interpretation, the language was not free of ambiguity. Therefore, JRS's claims that the Defendant breached the commercial items contracts by not executing a bilateral modification to add terms that specified that evaluations could be prepared and released as Source Selection Information in accordance with FAR Subpart 42.15 were not amenable to summary judgment resolution. *Kimco Realty Corp. v. United States*, 2005-5181 (Fed. Cir. 2006), (It is well established that "if more than one meaning is reasonably consistent with the contract language it cannot be deemed unambiguous." *C. Sanchez & Son, Inc. v. United States*, 6 F.3d 1539 , 1544 (Fed. Cir. 1993). Moreover, "[t]o the extent that the contract terms are ambiguous, requiring weighing of external evidence, the matter is not amenable to summary resolution." *Beta Sys. v. United States*,  838 F.2d 1179, 1183 (Fed. Cir. 1988) (citing Samuel Williston, A Treatise on the Law of Contracts § 616, at 649, 652 (3d ed. 1961)).

## ORAL ARGUMENT

Plaintiff-Appellant JRS does not request oral arguments on the issues presented herein.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the reasons outlined herein, Plaintiff-Appellant JRS requests this Court hold that the United States Court of Federal Claims has committed legal and factual error. Accordingly, JRS requests that this Court remand to the United States Court of Federal Claims for additional factual findings and further proceedings with respect to Count II, breach of contract, unilateral change the contract terms, Count III, the evaluations were arbitrary or capricious, and Count IV, breach of the implied duty of good faith and fair dealing.


Respectfully submitted,

S/Michele Yvette Sims
Michele Yvette Sims

Georgia State Bar number 716008

Sims Law Firm
2825 Breckinridge Blvd, Suite 170
Duluth, GA 30096
(404) 247-4936
(678) 802-3478 (fax)
myvettesims@yahoo.com

Attorney of record for Plaintiff- Appellant
Jacqueline R Sims LLC

Date of Brief June 17, 2014

## CERTIFICATE OF FILING AND PROOF OF SERVICE

I hereby certify that on this 17th day of June, 2014, the foregoing Brief of

Plaintiff/Appellant was filed electronically and served on the following parties

by electronic mail:

MICHAEL D. AUSTIN
Trial Attorney
Department of Justice
Commercial Litigation Branch
Civil Division
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20530
Tel: (202) 616-0321
Fax: (202) 307-7643
Email: Michael.Austin@usdoj.gov

*Counsel for the United States*

/s/Michele Yvette Sims
Michele Yvette Sims
Sims Law Firm
2825 Breckinridge Blvd, Suite 170
Duluth, GA 30096
Phone- (404) 247-4936
Fax- (678) 802-3478
Email- myvettesims@yahoo.com

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).  The brief contains 9,817 words, excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  The brief has been prepared in proportionally spaced typeface using Microsoft Office Word  in 14 point Times New Roman font.

As permitted by Fed. R. App. Proc. 32(a)(7)(C), the undersigned has relied upon the word count of this word-processing system in preparing this certificate.

Dated: June 17, 2014

/s/Michele Yvette Sims
Michele Yvette Sims
Sims Law Firm
2825 Breckinridge Blvd, Suite 170
Duluth, GA 30096
Phone- (404) 247-4936
Fax- (678) 802-3478
Email- myvettesims@yahoo.com

*Counsel for Plaintiff/Appellant*

---
## **ADDENDUM**
---

Appended to this brief in accordance with Fed. Cir. R. 28(a)(12) and 28(f)

are the following sections of the joint appendix:  the Judgment entered on February

26, 2014, (A1); the Opinion and Order dated February 25, 2014, (A2-A15); FAR

42.1502 (A50-A52).

# In the United States Court of Federal Claims

**Nos. 13-174 C and 13-196 C**

**JACQUELINE R. SIMS LLC**
**dba JRS Management**

 

                                                                    **JUDGMENT**

**v.**

**THE UNITED STATES**

       Pursuant to the court's Opinion and Order, filed February 25, 2014, granting defendant's motion for summary judgment,

       IT IS ORDERED AND ADJUDGED this date, pursuant to Rule 58, that judgment is entered in favor of defendant.

                                        Hazel C. Keahey
                                        Clerk of Court

**February 26, 2014**           By: s/ Debra L. Samler

                                        Deputy Clerk

<u>NOTE</u>: As to appeal, 60 days from this date, see RCFC 58.1, re number of copies and listing of <u>all plaintiffs</u>. Filing fee is $505.00.

**A1**

# In the United States Court of Federal Claims

No. 13-174C
No. 13-196C
(Filed February 25, 2014)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|                                        |     |
|----------------------------------------|-----|
|                                        | \*  |
| **JACQUELINE R. SIMS LLC,**            | \*  |
|                                        | \*  |
| Plaintiff,                             | \*  |
|                                        | \*  |
| v.                                     | \*  |
|                                        | \*  |
| **THE UNITED STATES,**                 | \*  |
|                                        | \*  |
| Defendant.                             | \*  |
|                                        | \*  |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## OPINION AND ORDER

Plaintiff Jacqueline R Sims LLC, dba JRS Management ("JRS"), filed the first complaint in this case at Civ. No. 13-174 on March 7, 2013. The second complaint was filed at Civ. No. 13-196 on March 18, 2013. By Order, these actions were consolidated on May 7, 2013. Both of these cases are contract actions.

On June 25, 2013, JRS filed a motion for leave to amend the pleadings and the Court granted the motion. These amended pleadings appear on the docket as attachments to the motion at Docket Entry 12.[1] After a brief interlude, the parties indicated their desire to file dispositive motions. JRS filed two separate summary judgment motions, each directed to one of the contracts at issue.[2] The Government filed a single motion, requesting summary judgment or dismissal, which applies to both actions.

For the reasons that follow, JRS's motions are both DENIED and the Government's motion is GRANTED, insofar as it requests summary judgment, and DENIED, as moot, with respect to its argument for dismissal.

---

[1] The Amended Complaints do not contain any exhibits or other attachments. For this reason, any references in this Opinion to attachments to either complaint are directed to the attachments to the originally-filed complaints.

[2] Both motions are filed together as one large document at Docket No. 17. The first, entitled "Plaintiff's Motion for Summary Judgment," addresses the Ceramics Contract. The second, entitled "Memorandum in Support of Plaintiff's Motion for Summary Judgment," addresses the Parenting Contract.

I.    **Background**

As stated above, this consolidated matter was originally filed as two separate cases. The claims are distinct in that they address two different contracts, Contract No. DJBP010100000006 (the "Ceramics Contract") and Control No. DJBP010100000005 (the "Parenting Contract") (together, the "Contracts"). The Ceramics Complaint was originally filed at Civ. No. 13-174, while the Parenting Complaint was originally filed at Civ. No. 13-196. Both contracts were executed by the Bureau of Prisons ("BOP").

### a. Plaintiff's Legal Theories

Both Complaints contain four counts which are substantially similar: (1) that the BOP exceeded its authority under FAR Subpart 42.15 by preparing past performance evaluations ("PPEs") for JRS's performance under the contracts; (2) that the BOP's preparation of the PPEs constitutes a unilateral change of the contract terms in violation of 52.212-4(c); (3) that the BOP's PPEs were arbitrary and capricious because the BOP negatively evaluated JRS for its failure to perform under unenforceable contracts; and (4) that the BOP breached the implied duty of good faith and fair dealing by producing allegedly inaccurate PPEs. The Ceramics Complaint includes one additional count, effectively alleging that the BOP affirmatively engaged in bad faith conduct related to the evaluation of JRS's performance under the Ceramics Contract which resulted in JRS losing out on a subsequent government contract.

### b. The Ceramics Contract

The Ceramics Contract was signed on September 24, 2009, with an effective date of October 1, 2009. The award was for a single base year plus four option years. The value of the Ceramics Contract was an estimated $63,180.

The Ceramics Contract required JRS to provide an on-site ceramics instructor to teach classes to inmates at the Federal Prison Camp, Alderson, West Virginia ("FPC"). JRS hired a subcontractor to provide the actual instruction. In practice, the Government would provide delivery orders or task orders to JRS requesting services, JRS would render service, and then JRS would invoice the Government for payment.

The Ceramics Contract incorporated FAR 52.216-21, Requirements (Oct 1995) Alternate I (Apr 1984). Paragraph c of this provision states that:

> The estimated quantities are not the total requirements of the Government activity specified in the Schedule, but are estimates of requirements in excess of the quantities that the activity may itself furnish within its own capabilities. Except as this contract otherwise provides, the Government shall order from the contractor all of that activity's requirements for supplies and services specified in the Schedule that exceed the quantities that the activity may itself furnish within its own capabilities.

A3

FAR 52.216-2(c). The Ceramics Contract also incorporated FAR 52.212-4(c), which provides that "[c]hanges in the terms and conditions of this contract may be made only by written agreement of the parties."

The schedule indicated that JRS was required to provide three sessions per week, each session lasting three hours. The schedule also reflected that there would be a total of 468 one-hour sessions per year. The schedule stated that this plan was "flexible."

JRS, by way of its subcontractor, provided services in October and November of 2009 and January of 2010—i.e., three of the first four months of the initial contract term. JRS has been paid in full for all services rendered. JRS did *not* provide services in December of 2009 or for the period from February 1, 2010 to September 30, 2010. Despite JRS's repeated failure to provide services, the Government exercised the first option period.

On September 9, 2010, the BOP generated a past performance evaluation ("PPE"), which it submitted to JRS for review and comment. JRS was rated for four criteria: quality of service ("unsatisfactory"), timeliness of performance ("poor"), business relations ("fair") and customer satisfaction ("fair"). *See* Ceramics Compl. at ¶ 36. The PPE referred to JRS's inability to provide a ceramics instructor during portions of the contract period. JRS submitted a response to the PPE on October 29, 2010. The substance of the response was that the quality of the services rendered was good, but it also explained why the subcontractor did not perform.

The contracting officer took JRS's comments into consideration and revised her ratings. JRS then evidently requested that the revised evaluation be reviewed by the contracting officer's superior because, on December 16, 2010, FPC's chief of acquisitions issued a memorandum concurring with the contracting officer's revised overall rating of fair. The final evaluation included ratings for JRS's quality of service, timeliness of performance, business relations, and customer satisfaction. The rating for quality of service appears to be the only change based on the reevaluation: the final rating was changed from "unsatisfactory" to "good."[3] Under the "timelines of performance" criteria, for which JRS received a final rating of "poor," the contracting officer stated:

> A review of the rating period reveals that four task orders were issued beginning October 2009 through September 30, 2010; however,

---

[3] As stated above, JRS alleges that its original ratings on the four criteria were "unsatisfactory," "poor," "fair," and "fair," respectively. On reevaluation, the latter three ratings remain unchanged. However, the quality of service rating was revised to "good," apparently on the basis that the original evaluation considered the entire contract term while the revised evaluation only rated JRS for the periods during which service was actually rendered. *See* Ceramics Compl. Ex. E at 2 ("Quality of [S]ervice was not rated for the period of time in which service was not rendered. The overall rating for Quality of Service, limited to the months service was performed, is revised to Good.").

service was not rendered from February 1, 2010 to September 30, 2010. JRS initially notified BOP that lack of service was due to personal illness of the contract instructor. Although, JRS did inform the BOP of the instructor's illness, such circumstances do not relieve the contractor of their obligation to provide service under the terms of the contract. Additionally, we note that service was not rendered as of June 2010 because JRS did not have an employee cleared to enter the institution to perform service. Failure to provide service during the last eight months of the rating period effectively compromised achievement of the contract requirements resulting in a revised rating of Poor for Timeliness of Performance for the full rating period.

Ceramics Compl. Ex. E at 2. JRS's ratings for business relations and customer satisfaction remained "fair," as in the original evaluation. The memorandum concluded with a statement that "[t]hese evaluations may be used to support future award decisions, and shall be therefore marked 'Source Selection Information.'" Id. at 3.

While all of this was going on, the BOP sent JRS a cure notice on November 12, 2010. The notice gave JRS 30 days to provide an instructor for the ceramics classes. JRS never obtained a replacement instructor. Therefore, on December 27, 2010, the BOP terminated JRS for default. The termination was subsequently converted into a termination for convenience.

It is not clear from the record precisely when this occurred, but sometime prior to February 28, 2012, JRS submitted a bid to provide radiology technologies services at the Federal Correction Institution in Miami, Florida ("FCI Miami"). On February 28, 2012, JRS was informed by phone that it had received a negative determination of responsibility and that the matter had been referred "to the SBA [Small Business Administration] for a COC [Certification of Competency] determination." Ceramics Compl. Ex. F at 1.

By email dated March 6, 2012, JRS informed FCI Miami that it had contracted with a subcontractor to provide the requested services. JRS requested that the FCI reverse its determination of nonresponsibility, withdraw the COC referral, and award JRS the contract. JRS's March 6, 2012 email did not refer to the Ceramics Contract at all.

On March 27, 2012, JRS submitted a "Contracts Disputes Act Claim" regarding the December 16, 2010 PPE. JRS requested equitable adjustment for an alleged unilateral change in the Ceramics Contract's terms based on the Government's generation of the PPE without JRS's express consent. JRS also argued, for the first time, that the contract was unenforceable as an indefinite delivery/requirements contract (for reasons which will be discussed below). JRS argued that the unenforceability of the contract rendered the BOP's evaluation of JRS's performance erroneous because the evaluation relied upon JRS's failure to perform when it was not legally obligated to perform at all.

On May 24, 2012, JRS's claim was denied in its entirety. The contracting officer's decision explained that, while FAR 42.1502(b) described instances when a contracting officer *must* produce a PPE, it did not prohibit contracting officers from producing them in situations not covered by the regulation. With respect to JRS's unenforceability argument, the contracting officer observed that JRS had failed to raise the issue more than a year before when it first had an opportunity to challenge the PPE ratings and therefore summarily rejected this argument.

On August 15, 2012, JRS submitted a revised claim which presented additional information and documentation but which was otherwise similar to its previous claim. This claim expanded the scope of JRS's legal arguments from the two grounds expressed in the original claim (unilateral change in the contract's terms and unenforceability) to the additional legal theories which form the basis of the instant litigation: violation of FAR 42.1502, unilateral modification of the contract, breach of the covenant of good faith and fair dealing, unenforceability and bad faith.

On October 12, 2012, the contracting officer summarily rejected JRS's revised claim, finding that "the allegations made stem from the same set of operative facts as, and are substantially the same as, the original claim [JRS] filed on March 27, 2012." Ceramics Compl. Ex. J. The contracting officer also concluded that JRS's claims pertaining to the FCI Miami contract were not related to the Ceramics Contract and therefore rejected JRS's arguments relating to the FCI Miami contract. This litigation followed.

### c. The Parenting Contract

On August 20, 2009, the parties entered into the Parenting Contract. The substantive provisions of the Parenting Contract largely mirror those in the Ceramics contract. The similarities between the two contracts include the inclusion of FAR 52.216-21, Requirements (Oct 1995) Alternate I (Apr 1984) and FAR 52.212-4(c).

The Parenting Contract established an effective date of October 1, 2009, and awarded a base year plus four one year option periods. The value of the contract was estimated at $81,432. The general structure of this arrangement mirrors the structure of the Ceramics Contract, save that the classroom subject matter was parenting skills rather than ceramics. Thus, JRS hired subcontractors to provide the actual instruction, JRS would receive notice of services to be furnished via delivery or task orders, and JRS would invoice the Government after services had been rendered.

JRS, through its subcontractors, provided services for the first year of the contract and the first four months of the first option period. JRS has been paid in full for all services rendered. No services were rendered during the last eight months of the first option period, and the Government opted not to exercise the second option period.

The BOP generated PPEs for the base year and the first option period. Both evaluations were submitted to JRS for review.  JRS submitted a rebuttal, wherein it

Case: 14-5076 Case: 14-5076 PARTICIPANTS ONLY Document: 11 Document: 6-2 Page: 62 Page: 62 Filed: 06/17/2014 Filed: 06/17/2014

Case 1:13-cv-00174-EJD Document 21 Filed 02/25/14 Page 6 of 14

countered specific ratings from the evaluation. On February 24, 2011, JRS was informed that the base year PPE had been reevaluated; JRS received an overall rating of "good" for the base year evaluation.

On March 27, 2012, JRS submitted a "Contracts Disputes Act Claim" regarding the base year and option year PPEs on the Parenting Contract. Once again, JRS argued that the generation of PPEs amounted to a unilateral change in the terms of the contract and for the first time, argued that the Parenting Contract was legally unenforceable for the same reasons expressed in the Ceramics Contract claim.

From this point, the Parenting Contract and the Ceramics Contract claims followed virtually identical paths. On the same date as the contracting officer denied JRS's Ceramics Contract claim, May 24, 2012, the contracting officer also denied the Parenting Contract claim. The contracting officer's reasoning mirrored the reasoning in the Ceramics Contract claim, to include the observation that JRS never raised the issue of enforceability when it first had an opportunity to comment on its ratings.

As with the Ceramics Contract, JRS submitted a second, more detailed claim on August 15, 2012. Just as the revised Ceramics Contract claim anticipated the legal claims filed in Civ. No. 13-174, the revised Parenting Contract claim anticipates the legal claims filed in Civ. No. 13-196. The Parenting Complaint mirrors the Ceramics Complaint save that it does not include the affirmative bad faith claim raised with respect to the Ceramics Complaint.

Finally, as with the Ceramics Contract claim, the revised Parenting Contract claim was denied on October 12, 2012. The contracting officer again found that the arguments raised in the revised claim were substantially the same as those raised in the original Parenting Contract claim. This litigation followed.

## II. Standard of Review

Under Rule 56 of the Rules of the Court of Federal Claims, summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* RCFC 56(c); *see also Celotex Corp. v. United States*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. A fact is only material if it might "affect the outcome of the suit under the governing law." *Id.*

## III. Discussion

The Court is faced with opposing motions and the legal standard described above applies equally to all of the pending motions. However, because the material facts are not in dispute, the Court will address both parties' opposing arguments simultaneously.

In presenting their arguments, the parties have combined a few of the Counts in JRS's complaints into one argument. To reiterate, both complaints state four counts: (1) that the BOP exceeded its authority to prepare performance evaluations as delineated in FAR Subpart 42.15; (2) that the BOP's preparation of the PPEs amounts to a unilateral change in the terms of the contracts, in violation of the Contracts' express incorporation of FAR 52.212-4(c); (3) that the BOP's evaluations were arbitrary and capricious because JRS received negative evaluations for failing to perform under contracts which were unenforceable; and (4) that the BOP, by preparing the PPEs as if JRS was obligated to perform when JRS claims it was not, breached the implied duty of good faith and fair dealing. The Ceramics Complaint states a fifth count alleging affirmative bad faith on the BOP's part when the BOP delivered the Ceramics PPE directly to FCI Miami.

The key issue in this case is the enforceability of the contracts. Unless the contracts are enforceable to some degree, JRS's arguments concerning violation of the FAR in preparing performance evaluations, unilateral change in the contracts, wrongful negative evaluations under the contracts, and the effect of the negative evaluations lack a legal basis.

### a. The Enforceability of the Contracts

The parties agree that the contracts are both unenforceable as written. Where the parties differ is their view of the degree to which these initially-unenforceable contracts became enforceable due to their conduct. On the one hand, JRS argues that the contracts are enforceable only to the extent that JRS performed. The Government, on the other hand, argues that JRS waived its opportunity to raise this argument or, alternatively, that there was an implied-in-fact contract (actually, two contracts) between the parties. As the Court understands the Government's position, both arguments result in a contract identical in scope to the original. The flaw that both parties agree renders the contracts unenforceable as written is that although the contracts purport to be requirements/indefinite quantity contracts, the contracts cannot be requirements contracts because they failed to make JRS the exclusive provider of services, *see Horn v. United States*, 98 Fed. Cl. 500, 504-505 (2011) (Smith, J.) (finding that FAR 52.216-21 (Oct. 1995) Alternate I (Apr. 1984) negates the exclusivity element necessary for a requirements contract), and they cannot be indefinite quantities contracts because they did not specify a guaranteed minimum number of services to be provided. *See id.* at 505 (an indefinite quantities contract requires an expressly-stated minimum quantity to be enforceable).

JRS's argument for limited enforceability relies on *Willard, Sutherland & Co. v. United States*, 262 U.S. 489 (1923) and the *Horn* case just mentioned. In both cases, the contract at issue was similar to those now before the Court and, in both cases, the contract was found to be unenforceable as written, but enforceable to the extent to which it was actually performed. *See Willard*, 262 U.S. at 494 ("While the contract at its inception was not enforceable, it became valid and binding to the extent that it was performed."); *Horn*, 98 Fed. Cl. at 506 (finding that, even though the contract was unenforceable at its

A8

inception, the plaintiff was "nonetheless entitled to payment for services actually ordered by, and performed for, the BOP.") (citing *Willard*, 262 U.S. at 494

The Government's first argument is that JRS cannot even make an argument for limited enforceability, because JRS waived its chance to do so. But all of the cases cited by the Government for this proposition involved a *knowing* waiver of rights under the contract. *See Ling-Temco-Vought, Inc. v. United States*, 201 Ct. Cl. 135, 475 F.2d 630, 637 (1973) ("wherever a contract not already fully performed is continued in spite of a *known* breach, the wronged party cannot avail himself of that excuse); *see also Aleutian Constructors v. United States*, 24 Cl. Ct. 372, 384 (1991) (the Government knew of a breach and did not request remedy). Here, there is no evidence that JRS knew of the unenforceability. It could not therefore waive its right to raise this argument.

The Government's alternate argument that the contracts are implied-in-fact contracts is based on *Howell v. United States*, 51 Fed. Cl. 516 (2002). In *Howell*, the court addressed a set of indefinite quantity contracts which failed to expressly state a guaranteed minimum. Facially, then, the *Howell* contracts resembled the contracts in *Willard* and *Horn*, the cases cited by JRS. Unlike *Willard* and *Horn*, however, the *Howell* contracts were found enforceable. In short, the court's decision was based upon the inclusion of FAR 52.216-22,[4] which necessarily obligated the Government "to order *some* minimum quantity of plaintiff's services." *Howell*, 51 Fed. Cl. at 523 (emphasis in original). The Court merely supplied the specific minimum in contracts which already contained an implicit minimum. *See id.* at 523-24.

The problem with this argument is that the relevant FAR provision for the contracts at issue is FAR 52.216-21, not FAR 52.216-22, as in the *Howell* case. In the Court's view, FAR 52.216-21 does not carry the same implicit minimum as FAR 52.216-22. Instead, FAR 52.216-21 leaves open the possibility that the Government will purchase nothing at all. *See* FAR 52.216-21, Requirements (Oct 1995) Alternate I (Apr 1984) ("Except as this contract otherwise provides, the Government shall order from the Contractor all of that activity's requirements for supplies and services in the Schedule *that exceed the quantities that the activity may furnish within its own capabilities*.") (emphasis added).

*Willard* and *Horn*, on the other hand, are directly applicable: they held that contracts unenforceable at their inception for the same reason as the contracts now before the Court become enforceable to the extent that they are actually performed by the parties. Accordingly, the Court concludes that the contracts were both enforceable to the extent that they were actually performed. Nevertheless, the Court's determination that the contracts are enforceable to some degree does not necessarily lead to JRS's other conclusions.

_____

[4] Note that this provision is *not* the same as the provision now before the Court: the contracts-in-suit contain FAR 52.216-21, not 52.216-22.

A9

**b.  The Government Did Not Exceed Its Authority Under FAR
Subpart 42.15 or Unilaterally Change the Terms of the Contracts**

Based on the limited enforceability of the contracts, JRS argues that the BOP's
preparation of the PPEs went beyond its authority either under the FAR or the contract itself. In
effect, these arguments boil down to two points: (1) the BOP violated FAR Subpart 42.15 by
preparing performance evaluations which are not mandated by that FAR provision, and (2) the
Government breached the terms of the contract by making a unilateral change.

JRS focuses on FAR 42.1502 (included under FAR Subpart 42.15) in particular.
According to JRS, FAR 42.1502 describes the only situations in which a government agency can
prepare PPEs (presumably absent contractual authority to do so). The Government argues to the
contrary, arguing that FAR 42.1502 only applies to situations in which the government must or
must not prepare PPEs. In all other instances, the Government argues, the preparation of PPEs is
left to the discretion of the contracting officer.

FAR 42.1502 states:

(a) *General*. Past performance evaluations shall be prepared at
least annually and at the time the work under a contract or order is completed.
Past performance evaluations are required for contracts and orders for supplies,
services, research and development, and contingency operations, including
contracts and orders performed inside and outside the United States, with the
exception of architect-engineer and construction contracts or orders, which will
still be reported into the Architect-Engineer Contract Administration Support
System (ACASS) and Construction Contractor Appraisal Support System
(CCASS) databases of CPARS. These evaluations are generally for the entity,
division, or unit that performed the contract or order. Past performance
information shall be entered into CPARS, the Governmentwide evaluation
reporting tool for all past performance reports on contracts and orders.
Instructions for submitting evaluations into CPARS are available at
http://www.cpars.gov/.
(b) *Contracts*. Except as provided in paragraphs (e), (f), and (h) of
this section, agencies shall prepare evaluations of contractor performance for each
contract (as defined in FAR part 2) that exceeds the simplified acquisition
threshold and for each order that exceeds the simplified acquisition threshold.
Agencies are required to prepare an evaluation if a modification to the contract
causes the dollar amount to exceed the simplified acquisition threshold.
(c) *Orders under multiple-agency contracts*. Agencies shall
prepare an evaluation of contractor performance for each order that exceeds the
simplified acquisition threshold that is placed under a Federal Supply Schedule
contract or placed under a task-order contract or a

Case: 14-5076 Case: 14-5076  PARTICIPANTS ONLY  Document: 6  Document: 11  Page: 66  Page: 66  Filed: 06/17/2014  Filed: 06/17/2014

Case 1:13-cv-00174-EJD Document 21 Filed 02/25/14 Page 10 of 14

delivery-order contract awarded by another agency (*i.e.*, Government wide acquisition contract or multi-agency contract). Agencies placing orders under their own multiple-agency contract shall also prepare evaluations for their own orders. This evaluation shall not consider the requirements under paragraph (g) of this section. Agencies are required to prepare an evaluation if a modification to the order causes the dollar amount to exceed the simplified acquisition threshold.

(d) *Orders under single-agency contracts*. For single-agency task-order and delivery-order contracts, the contracting officer may require performance evaluations for each order in excess of the simplified acquisition threshold when such evaluations would produce more useful past performance information for source selection officials than that contained in the overall contract evaluation (*e.g.*, when the scope of the basic contract is very broad and the nature of individual orders could be significantly different). This evaluation need not consider the requirements under paragraph (g) of this section unless the contracting officer deems it appropriate.

(e) Past performance evaluations shall be prepared for each construction contract of $650,000 or more, and for each construction contract terminated for default regardless of contract value. Past performance evaluations may also be prepared for construction contracts below $650,000.

(f) Past performance evaluations shall be prepared for each architect-engineer services contract of $30,000 or more, and for each architect-engineer services contract that is terminated for default regardless of contract value. Past performance evaluations may also be prepared for architect-engineer services contracts below $30,000.

(g) Past performance evaluations shall include an assessment of contractor performance against, and efforts to achieve, the goals identified in the small business subcontracting plan when the contract includes the clause at 52.219-9, Small Business Subcontracting Plan.

(h) Agencies shall not evaluate performance for contracts awarded under Subpart 8.7.

(i) Agencies shall promptly report other contractor information in accordance with 42.1503(h).


Several parts of this FAR provision inform the Court's conclusion that a contracting officer is given discretion to prepare performance evaluations in those circumstances not expressly described in the FAR. First, paragraph (a) generally provides that PPEs should be produced annually. This language is very broad. Second, Paragraphs (b) through (d) require preparation of PPEs when a contract exceeds a simplified acquisition threshold. They do not forbid PPEs; they only state requirements for when an evaluation *must* be prepared. Third, Paragraph (h) expressly states that agencies "shall not" evaluation performance in limited circumstances not relevant here. This tells the Court that the drafters of the FAR knew how to withhold authority when

A11

they wished to do so. Finally, Paragraphs (e) and (f) simply require evaluations when construction or architect-engineer services contracts exceed a specified value.

JRS argues that the second sentence in both Paragraphs (e) and (f) somehow indicates the intent to limit the discretion of contracting officers. Both paragraphs include a statement that "[p]ast performance evaluations may also be prepared for [construction or architect-engineer services] contracts below" the specified value. To the contrary, the Court reads these two statements as simply affirming the general authority of contracting officers to prepare PPEs on a discretionary basis. The provisions stand only for the proposition that a contracting officer *must* prepare evaluations when expressly required, but that he otherwise has the discretionary authority to prepare PPEs when not expressly required. They stand for nothing more. Thus, by this Court's reading of the FAR, contracting officers have broad discretion in producing evaluations, except in the limited circumstances discussed in FAR 42.1502.

JRS's breach argument is less clear than its FAR argument, but seems to boil down to the argument that the preparation of the PPEs was a unilateral change to the contracts. This argument is based on two points: (1) the Contracts did not expressly provide for the preparation of evaluations, and (2) the Contracts expressly incorporated FAR 52.212-4, which includes a requirement that any modification to the scope of the contract "may be made only by written agreement of the parties." FAR 52.212-4(c). JRS argues that the Government unilaterally modified the Contracts and did not do so in writing, which act constitutes a breach.

As to whether the contract expressly provides for the preparation of evaluations, both contracts state that "[t]he [contracting officer] is responsible, as applicable, for: … evaluating performance." *See* Ceramics Compl. Ex. A at 9; Parenting Compl. Ex. A at 10. This is the *only* language in either contract that refers to performance evaluation, and it certainly does not place a duty upon the BOP *not* to prepare the evaluations. Indeed, it *does* seem to be a provision that expressly provides for preparation of evaluations.

The statement quoted above also disposes of JRS's argument based on the written modification agreement requirement of the FAR. Once again, the Contracts both provided that the contracting officer could evaluate performance "as applicable." The Court's discussion of FAR 42.1502 demonstrates that an evaluation in this particular instance is left to the discretion of the contracting officer. It would then follow that a contracting officer's exercise of that discretion falls within the purview of the Contracts' "as applicable" language. No modification was necessary for the BOP to evaluation JRS's performance.

### c. The Government Did Not Breach Any Implied Covenant of Good Faith And Fair Dealing

JRS next argues, with respect to both contracts, that the Government breached an implied covenant of good faith and fair dealing. For example, JRS claims that the

A12

Government's ratings were decreased based on JRS's failure to perform work which it was under no obligation to perform. The Government, of course, argues to the contrary.

The implied duty of good faith and fair dealing "is an implied duty that each party to a contract owes to its contracting partner." *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005). This duty imposes obligations on both parties, including "the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." *Id.* This implied duty extends to the Government. *Id.*

As the Government observes here, JRS must clear a significant evidentiary hurdle in order to meet its burden. This hurdle comes in the form of the presumption that government officials act in good faith. *See Kalvar Corporation, Inc. v. United States*, 211 Ct. Cl. 192, 543 F.2d 1298, 1301-1302 (1976); *see also Road and Highway Builders, LLC v. United States*, 702 F.3d 1365, 1368 (Fed. Cir. 2012) ("We and our predecessor court, the Court of Claims, have long upheld the principle that government officials are presumed to discharge their duties in good faith."). This presumption may only be overcome by the presentation of clear and convincing evidence that the official did not discharge his or her duty in good faith. *See Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1239-40 (Fed. Cir. 2002).

Here, the only evidence before the Court shows that the parties entered into a pair of contracts that, while unenforceable, were not treated as such. JRS argues that the Government's performance evaluations were inaccurate because JRS was not obligated to perform. While it certainly was not obligated to perform under an unenforceable contract, the evidence shows that despite the flaws in the written language of the contracts, the parties intended to be bound. For a period of time, JRS performed exactly as called for in the contracts. *See* Ceramics Compl. at ¶ 25 (JRS performed during October and November of 2009, the first two months of the contract); Parenting Compl. at ¶ 26 (JRS performed for the entire first year of the contract, as well as the first four months of the option year one). The Government paid for all services rendered. After an initial period of performance, JRS suddenly ceased providing services on both contracts.

Even though the contracts were unenforceable as written, this evidence does not demonstrate any bad faith on the Government's part. The parties performed as if their conduct was governed by an enforceable contract: JRS performed and the Government paid. Indeed, after the Government prepared the performance evaluations for both contracts, JRS had the opportunity to comment on the evaluations. JRS did not raise even the specter of unenforceability. From the Court's view, both parties acted as if they were bound by a contract which required that JRS perform certain services whenever the Government requested them.

For these reasons, the Court finds that JRS has failed to demonstrate anything in the Government's actions that breach the implied duty of good faith and fair dealing or otherwise demonstrate that the BOP's evaluations were arbitrary or capricious.

A13

Therefore, the Government is entitled to summary judgment with respect to JRS's implied duty claims.

### d. The Government Did Not Affirmatively Act in Bad Faith

This particular argument applies only to the Ceramics Contract. Relying on *Levering & Garrigues Co. v. United States*, 71 Ct.Cl. 739, 757 (1931), JRS argues not that the BOP failed to act in good faith, but that its conduct was so arbitrary and grossly erroneous that it constitutes bad faith. The Government argues that the contracting officer's actions were in accord with the relevant regulations.

This argument revolves largely around JRS's proposal relating to the FCI Miami solicitation. Specifically, JRS notes that even though the contracting officer marked the Ceramics PPE as "source selection information," the PPE was never submitted to the Past Performance Information Retrieval System ("PPIRS"). Because the PPE was never submitted to PPIRS, JRS argues that the FCI Miami contracting officer "did not obtain the evaluation by accessing the PPIRS database of her own volition." Ceramics Mot. at 18. It appears, based on the pleadings, that the FCI Miami contracting officer received the PPE directly from the FPC officers in West Virginia. JRS claims that its bid on the FCI Miami solicitation was rejected because of the Ceramics PPE.

The Court returns once again to the presumption of good faith on the part of government officials. *See Road and Highway Builders*, 702 F.3d at 1368. The only evidence that JRS has provided in support of this argument is that the FPC contracting officer provided the Ceramics evaluation to the FCI Miami staff. Thus, JRS has offered no evidence that the contracting officer was acting in bad faith by providing the PPE to FCI Miami. To the contrary, as the Government argues, the contracting officer's disclosure of the Ceramics evaluation was proper under the FAR. *See* FAR 9.105-1(d) ("Contracting officers and cognizant contract administration offices that become aware of circumstances casting doubt on a contractor's ability to perform contracts successfully *shall promptly exchange relevant information*.") (emphasis added); *see also* FAR 9.105-1(a) ("Before making a determination of responsibility, the contracting officer *shall possess or obtain information* sufficient to be satisfied that a prospective contractor currently meets the applicable standards in 9.104.").

In addition, the Government briefly touches on a point that this Court finds particularly relevant here. The Government observes that JRS should have filed a bid protest on the FCI Miami solicitation if it wished to protest the finding of non-responsibility. The Court agrees on this point, as it appears that the alleged injury which resulted from the alleged bad faith is JRS's failure to receive the FCI Miami award; the alleged actions did not interfere with the performance of the Ceramics Contract in any way.

Again, the record is devoid of any evidence that supports JRS's legal theory. JRS's failure to meet its evidentiary burden once again leads the Court to conclude that the Government is entitled to summary judgment with respect to JRS's bad faith claim.

A14

### IV. Conclusion

In sum, the Court finds that the undisputed facts entitle the Government to summary judgment on all counts of both complaints. Regarding Count I, the Government did not exceed its authority under FAR Subpart 42.15 when it prepared the performance evaluations at issue. As to Count II, the Government did not unilaterally change the terms of either contract when it prepared the evaluations. Even though the contracts were unenforceable, the Court does not believe that the evaluations were arbitrary or capricious, as alleged in Count III, because both parties acted for substantial periods of time as if they both intended to be bound by the contracts. Even when given the opportunity to raise this issue when it was provided with the draft evaluations, JRS failed to do so. JRS failed to present any evidence that the Government breached the implied duty of good faith and fair dealing, as alleged in Count IV. Likewise, JRS has failed to present any evidence of bad faith as alleged in Count V of the Ceramics Complaint.

Because the Court has determined that the Government is entitled to summary judgment as to all counts in JRS's two complaints, it does not reach the Government's arguments for dismissal pursuant to RCFC 12(b)(6).

For these reasons, JRS's motions for summary judgment are DENIED and the Government's motion for summary judgment is GRANTED. The Clerk is directed to enter judgment accordingly.

s/ Edward J. Damich
EDWARD J. DAMICH
Judge

A15

## Subpart 42.15—Contractor Performance Information
### 42.1500  Scope of subpart.

This subpart provides policies and establishes responsibilities for recording and maintaining contractor performance information. This subpart does not apply to procedures used by agencies in determining fees under award or incentive fee contracts. However, the fee amount paid to contractors should be reflective of the contractor's performance and the past performance evaluation should closely parallel the fee determinations.

42.1501  General.

Past performance information is relevant information, for future source selection purposes, regarding a contractor's actions under previously awarded contracts. It includes, for example, the contractor's record of conforming to contract requirements and to standards of good workmanship; the contractor's record of forecasting and controlling costs; the contractor's adherence to contract schedules, including the administrative aspects of performance; the contractor's history of reasonable and cooperative behavior and commitment to customer satisfaction; the contractor's record of integrity and business ethics, and generally, the contractor's business-like concern for the interest of the customer.

42.1502  Policy.

(a) Past performance evaluations shall be prepared as specified in paragraphs (b) through (g) of this section at the time the work under the contract or order is completed. In addition, interim evaluations shall be prepared as specified by the agencies to provide current information for source selection purposes, for contracts or orders with a period of performance, including options, exceeding one year. These evaluations are generally for the entity, division, or unit that performed the contract or order. The content of the evaluations should be tailored to the size, content, and complexity of the contractual requirements.

(b) Except as provided in paragraphs (e), (f) and (h) of this section, agencies shall prepare an evaluation of contractor performance for each contract that exceeds the simplified acquisition threshold.

(c) Agencies shall prepare an evaluation of contractor performance for each order that exceeds the simplified acquisition threshold placed against a Federal Supply Schedule contract, or under a task order contract or a delivery order contract awarded by another agency (i.e. Governmentwide acquisition contract or multi-

A50

agency contract). This evaluation shall not consider the requirements under paragraph (g) of this section.

(d) For single-agency task order and delivery order contracts, the contracting officer may require performance evaluations for each order in excess of the simplified acquisition threshold when such evaluations would produce more useful past performance information for source selection officials than that contained in the overall contract evaluation (e.g., when the scope of the basic contract is very broad and the nature of individual orders could be significantly different). This evaluation need not consider the requirements under paragraph (g) of this section unless the contracting officer deems it appropriate.

(e) Past performance evaluations shall be prepared for each construction contract of $550,000 or more, and for each construction contract terminated for default regardless of contract value. Past performance evaluations may also be prepared for construction contracts below $550,000.

(f) Past performance evaluations shall be prepared for each architect-engineer services contract of $30,000 or more, and for each architect-engineer services contract that is terminated for default regardless of contract value. Past performance evaluations may also be prepared for architect-engineer services contracts below $30,000.

(g) Past performance evaluations shall include an assessment of contractor performance against, and efforts to achieve, the goals identified in the small business subcontracting plan when the contract includes the clause at 52.219-9, Small Business Subcontracting Plan.

(h) Agencies shall not evaluate performance for contracts awarded under Subpart 8.7.

42.1503  Procedures.

(a) Agency procedures for the past performance evaluation system shall generally provide for input to the evaluations from the technical office, contracting office and, where appropriate, end users of the product or service. Agency procedures shall identify those responsible for preparing interim and final evaluations. Those individuals identified may obtain information for the evaluation of performance from the program office, administrative contracting office, end users of the product or service, and any other technical or business advisor, as appropriate. Interim evaluations shall be prepared as required.

(b) Agency evaluations of contractor performance prepared under this subpart shall be provided to the contractor as soon as practicable after completion of the evaluation. Contractors shall be given a minimum of 30 days to submit comments, rebutting statements, or additional information. Agencies shall provide for review at a level above the contracting officer to consider disagreements between the parties regarding the evaluation. The ultimate conclusion on the performance evaluation is a decision of the contracting agency. Copies of the evaluation, contractor response, and review comments, if any, shall be retained as part of the evaluation. These evaluations may be used to support future award decisions, and should therefore be marked "Source Selection Information." Evaluation of Federal Prison Industries (FPI) performance may be used to support a waiver request (see 8.604) when FPI is a mandatory source in accordance with Subpart 8.6. The completed evaluation shall not be released to other than Government personnel and the contractor whose performance is being evaluated during the period the information may be used to provide source selection information. Disclosure of such information could cause harm both to the commercial interest of the Government and to the competitive position of the contractor being evaluated as well as impede the efficiency of Government operations. Evaluations used in determining award or incentive fee payments may also be used to satisfy the requirements of this subpart. A copy of the annual or final past performance evaluation shall be provided to the contractor as soon as it is finalized.

(c) Agencies shall submit past performance reports electronically to the Past Performance Information Retrieval System (PPIRS) at www.ppirs.gov. The process for submitting such reports to PPIRS shall be in accordance with agency procedures.

(d) Any past performance information systems used for maintaining contractor performance information and/or evaluations should include appropriate management and technical controls to ensure that only authorized personnel have access to the data.

(e) Agencies shall use the past performance information in PPIRS that is within three years (six for construction and architect-engineer contracts) of the completion of performance of the evaluated contract or order.