NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————————

**JACQUELINE R. SIMS, LLC, DBA
JRS Management,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

———————————————

2014-5076

———————————————

Appeal from the United States Court of Federal Claims in No. 1:13-cv-00196-EJD, Judge Edward J. Damich.

———————————————

Decided: January 27, 2015

———————————————

MICHELE YVETTE SIMS, Sims Law Firm, of Duluth, Georgia, for plaintiff-appellant.

MICHAEL D. AUSTIN, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for defendant-appellee. With him on the brief were STUART F. DELERY, Assistant Attorney General, ROBERT E. KIRSCHMAN, JR., Director, and STEVEN J. GILLINGHAM, Assistant Director.

————————————

Before MOORE, WALLACH, and CHEN, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Appellant Jacqueline R. Sims, LLC ("JRS") seeks review of the decision of the United States Court of Federal Claims in *Jacqueline R. Sims, LLC v. United States*, No. 13-174 (Fed. Cl. Feb. 25, 2014) ("*Sims*") (J.A. 1–15), granting summary judgment in favor of Appellee the United States. For the reasons set forth below, this court affirms.

## BACKGROUND

### A. The Ceramics Contract

JRS signed Contract No. DJBP010100000006 ("Ceramics Contract") with the United States, acting through the Federal Bureau of Prisons ("BOP"), on September 24, 2009, with an effective date of October 1, 2009. The value of the contract award was $63,180 for a base year and included four option years. Under the terms of the contract, JRS was to provide ceramics instruction to the inmates at Federal Prison Camp ("FPC"), Alderson, West Virginia. JRS hired a subcontractor who provided the ceramics instruction. Typically, JRS would receive a task order and would then provide a payment invoice to the Government.

JRS was required to provide three sessions a week, each session lasting three hours, totaling 468 hour sessions per year. Federal Acquisition Regulation, 48 C.F.R. ch. 1 ("FAR") § 52.216-21, titled "Requirements (Oct. 1995) Alternate I (Apr. 1984)," was incorporated into the contract and defines the requirements terms of the contract. J.A. 29.

JRS's subcontractor provided services in October and November 2009 and January 2010, and was paid in full

for those services.  JRS did not provide any services to the Government "during December 2009, or for the period from February 1, 2010 to September 30, 2010."  *Sims*, at 4.  The Government exercised the first option period, extending the contract to September 2011.

On September 9, 2010, BOP prepared a Past Performance Evaluation ("PPE") pursuant to FAR § 42.15.  JRS was rated on four criteria: quality of service ("unsatisfactory"); timeliness of performance ("poor"); business relations ("fair"); and customer satisfaction ("fair")."  *Id.*  BOP noted JRS had failed to provide a ceramics instructor for the inmates during part of the performance period.  JRS responded and argued that when actual services were provided, they were of "good quality."  J.A. 87.  The company also provided an explanation why the subcontractor failed to provide services.  Based on this response, the evaluation was changed from overall "unsatisfactory" to "fair."  JRS asked for review of the evaluation.  Citing FAR § 42.1503(b), BOP's chief of acquisition issued a memorandum in which JRS was evaluated on the four criteria listed above.  Under "Timeliness of Performance," JRS received a rating of "Poor" because it failed to provide services under the contract. The officer wrote:

> A review of the rating period reveals that four task orders were issued beginning in October 2009 through September 30, 2010; however, service was not rendered from February 1, 2010 to September 30, 2010.  JRS initially notified BOP that lack of service was due to personal illness of the contract instructor.  Although, JRS did inform the BOP of their instructor's illness, such circumstances do not relieve the contractor of [its] obligation to provide service under the terms of the contract.  Additionally, we note that service was not rendered as of June 2010 because JRS did not have an employee cleared to enter the institution to perform service.  Failure to provide service during the last

eight months of the rating period effectively com-
promised achievement of the contract require-
ments resulting in a revised rating of <u>Poor</u> for
Timeliness of Performance for the full rating peri-
od.

J.A. 83.  Relating to business relations, JRS received a
rating of "Fair."  J.A. 84.  According to the contracting
officer:

> JRS was notified more than once during the rat-
> ing period that the contract instructor was not
> performing service. . . . Responses to contractual
> issues were generally effective at the beginning of
> the rating period; however, the effectiveness and
> responsiveness to issues of non-performance
> steadily declined in the last eight months of the
> rating period rendering an overall rating for
> Business Relations for the full rating period of
> Fair.

J.A. 84.  JRS received a rating of "Good" for "Quality of
Service" and a rating of "Fair" for "Customer Satisfac-
tion."  J.A. 83–84.  The last sentence of the memorandum
read "[t]hese evaluations may be used to support future
award decisions, and shall be therefore marked 'Source
Selection Information.'"[1]  J.A. 84.

On November 12, 2010, BOP notified JRS that the
company had "failed to provide . . . ceramics instruction
services since June 29, 2010" and JRS had thirty days to

---

[1]    "Source Selection Information" means certain in-
formation "prepared for use by an agency for the purpose
of evaluating a bid or proposal to enter into an agency
procurement contract, if that information has not been
previously made available to the public or disclosed
publicly."  FAR § 2.101.

provide a replacement instructor. Appellee's Supp. App. ("Supp. App.") 57. JRS failed to find a replacement. On December 27, 2010, BOP accordingly notified JRS it was "considering terminating th[e] contract for cause." *Id.* at 58. The contract was terminated on January 24, 2011, and after JRS appealed the termination, it was converted into a termination for convenience.

In February 2012, JRS bid on a contract to provide radiology technologist services at the Federal Correctional Institution in Miami, Florida. Based in part on JRS's PPE, a contracting officer for BOP, determined that JRS was non-responsible and JRS was not awarded the contract. JRS was notified of the decision and that the "matter [had been referred] to the [Small Business Association] for a [Certificate of Competency ("COC")] determination." Supp. App. 66.

JRS then requested that the agency "reverse your determination of nonresponsibility, withdraw the COC referral, and proceed to award my firm the contract." *Id.* JRS did not mention the Ceramics Contract evaluation or any argument about the unenforceability of the Ceramics Contract. JRS did not take any other action relating to the non-responsibility finding.

On March 27, 2012, JRS submitted a "Contracts Disputes Act Claim," requesting relief from the December 16, 2010, PPE. JRS requested an equitable adjustment in the amount of $1500 for what it alleged was a breach by the Government of the contract terms. Specifically, JRS argued PPEs were not authorized for the contract and that by issuing a PPE, BOP "unilaterally chang[ed]" the terms of the contract without first obtaining JRS's written consent. *Id.* at 68. JRS also raised the issue of unenforceability for the first time, arguing "[t]he fact that the contract at issue was not legally enforceable is key with regards to the Contractor Performance Report, because it means that my company was under no legal obligation to

furnish Ceramics Instructor services ordered by the Government." Supp. App. 71.

On May 24, 2012, JRS's claim was denied and the contracting officer explained: "[a]lthough per FAR [§] 42.1502(b), Federal agencies are only required to prepare evaluations of contractor performance for a contract that exceeds the simplified acquisition threshold, Contracting Officers are not prohibited from utilizing this resource for contracts not exceeding the simplified acquisition threshold." Supp. App. 72. The contracting officer also stated she would "not reopen a performance evaluation review more than a year later to address concerns that JRS was capable of raising in the designated time frames for review," and thus there was insufficient reason to change the evaluation. *Id* at 73.

On August 15, 2012, JRS presented additional documentation and a revised claim, which expanded the scope of JRS's legal arguments to include: violation of FAR § 42.1502; unilateral modification of the contract; breach of the covenant of good faith and fair dealing; unenforceability; and bad faith. On October 12, 2012, the contracting officer rejected JRS's revised claim, finding "the allegations made stem from the same set of operative facts as, and are substantially the same as, the original claim [JRS] filed on March 27, 2012." *Id.* at 97.

B. The Parenting Contract

On or about August 20, 2009, JRS entered into a contract with the BOP to provide parenting classes ("Parenting Contract"). Pursuant to the contract, JRS was to provide classes in order to "support positive relationships between inmates and their children during and after their incarceration." J.A. 92. As the Court of Federal Claims explained, "[t]he substantive provisions of the Parenting Contract largely mirror those in the Ceramics contract. The similarities between the two contracts include the inclusion of FAR 52.216-21, Requirements (Oct. 1995)

Alternate I (Apr. 1984) and FAR 52.212-4(c)." *Sims*, at 6. The effective date of this contract was October 1, 2009, it included a base year plus four one-year option periods, and was valued at $81,432. Like the Ceramics Contract, the process entailed JRS receiving a task order; JRS hiring subcontractors to provide the actual instruction; and JRS invoicing the Government after the services had been rendered.

Through its subcontractors, JRS performed the "services for the first year of the contract and the first four months of the first option period," and has been paid for these services. *Sims*, at 6. No services were rendered during the last eight months of the first option period, and the Government opted not to exercise the second option period.

The BOP produced a PPE for the base year and the first option period, and both were submitted to JRS for review. JRS submitted a rebuttal and on February 24, 2011, JRS received an amended PPE, receiving an overall rating of "good" for the base year evaluation. JRS did not raise the unenforceability of the contract as an excuse for its non-performance in its rebuttal. JRS submitted a "Contracts Disputes Act Claim" relating to the base year and option year PPE on the Parenting Contract on March 27, 2012. Similar to the Ceramics Contract, JRS argued the generation of PPEs amounted to a unilateral change in the terms of the contract, and for the first time argued the Parenting Contract was legally unenforceable for the same reasons expressed in the Ceramics Contract claim.

The Court of Federal Claims noted "the Parenting Contract and the Ceramics Contract claims followed virtually identical paths." *Sims*, at 7. On the same date the contracting officer denied JRS's Ceramics Contract claim, May 24, 2012, the Parenting Contract claim was also denied for the same reasons. As with the Ceramics Contract, JRS submitted an amended claim with addi-

tional legal theories on August 15, 2012, and "[t]he Parenting Complaint mirrors the Ceramics Complaint save that it does not include the affirmative bad faith claim raised with respect to the Ceramics Complaint." *Id.* Both complaints allege four counts: (1) the BOP exceeded its authority to prepare performance evaluations as delineated in FAR Subpart 42.15; (2) the BOP's preparation of the PPEs amounts to a unilateral change in the terms of the contracts, in violation of the Contracts' express incorporation of FAR § 52.212-4(c); (3) the BOP's evaluations were arbitrary and capricious because JRS received negative evaluations for failing to perform under contracts which were unenforceable; and (4) the BOP, by preparing the PPEs as if JRS was obligated to perform when JRS claims it was not, breached the implied duty of good faith and fair dealing. The Ceramics Complaint states a fifth count alleging affirmative bad faith on the BOP's part when the BOP PPE delivered the Ceramics PPE directly to the Federal Correctional Institution in Miami.

As with the Ceramics Contract claim, the revised Parenting Contract claim was denied on October 12, 2012. The contracting officer determined the arguments raised in the revised claim were substantially the same as those raised in the original Parenting Contract claim.

JRS appeals and this court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(3) (2012).

## DISCUSSION

Summary judgment is appropriate "when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." R. Ct. Fed. Cl. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. A fact is material if it could "affect the outcome of the suit under the governing law." *Id.*

A grant of summary judgment by the Court of Federal Claims is reviewed de novo. *Local Okla. Bank, N.A. v. United States*, 452 F.3d 1371, 1376 (Fed. Cir. 2006). In particular, "[t]his court reviews judgments of the Court of Federal Claims to determine whether they are premised on clearly erroneous factual determinations or otherwise incorrect as a matter of law." *Foley Co. v. United States*, 11 F.3d 1032, 1034 (Fed. Cir. 1993) (citing *Transamerica Ins. Corp. v. United States*, 973 F.2d 1572, 1576 (Fed. Cir. 1992)).

## I. The Court of Federal Claims Correctly Determined the Contract Was Enforceable as Performed

The Court of Federal Claims concluded "the contracts were both enforceable to the extent that they were actually performed." *Sims*, at 9. Both parties agree the contract was enforceable as performed, however, JRS contends "[s]ince the contracts were unenforceable and only binding to the extent actually performed, during periods when JRS did not perform, no valid contract existed." Appellant's Br. 12. Additionally, JRS argues, "[t]he contracts were unenforceable at inception—a fact which the BOP admits. This means that JRS had no obligation to perform. Case law clearly settles that an unenforceable requirements contract is only definite and binding to the extent actually performed by the parties." *Id.* Essentially, JRS argues it could be evaluated only when it physically performed (i.e., taught a ceramics or parenting class) as agreed, and not when it chose not to perform.

JRS also argues the Court of Federal Claims erred in finding no genuine dispute of material fact because "JRS disputed the factual allegation that the parties acted at all times as if there was mutuality of intent to be bound, and provided sufficient evidence to prove that the factual dispute was genuine." *Id.* at 18. Furthermore, to JRS, it "never acted as if bound to perform, and at no time did

JRS perform exactly as prescribed by the contracts." *Id.* at 18–19. JRS also contends the "record demonstrates that the BOP never intended to be bound to the contracts as if they were enforceable requirements contracts." *Id.* at 19. To JRS, because "an essential element of a requirements contract is the promise by the buyer to purchase the subject matter of the contract exclusively from the seller," that BOP used other entities to fulfill its needs demonstrates BOP did not act as though it was bound. *Id.*

As the Court of Federal Claims explained, "[t]he parties performed as if their conduct was governed by an enforceable contract," *Sims*, at 13, and the Government paid JRS for all performed services. The court also emphasized:

> [T]he only evidence before the Court shows that the parties entered into a pair of contracts that, while unenforceable, were not treated as such. . . . The parties performed as if their conduct was governed by an enforceable contract: JRS performed and the Government paid. Indeed, after the Government prepared the performance evaluations for both contracts, JRS had the opportunity to comment on the evaluations. JRS did not raise even the specter of unenforceability. From the Court's view, both parties acted as if they were bound by a contract which required that JRS perform certain services whenever the Government requested them.

*Id.* Though JRS makes contrary arguments, it does not provide support for these assertions. Without evidence from Appellant, these findings will not be disturbed. Indeed, when given the chance to review the PPEs of the Ceramics and Parenting Contracts, JRS rebutted the ratings, and provided explanations for why the subcontractors failed to provide services. JRS did not raise any

enforceability argument. *See* Supp. App. 65, 168. Thus, the Court of Federal Claims correctly determined "despite the flaws in the written language of the contracts, the parties intended to be bound." *Sims*, at 13.

JRS alternatively argues "the question as to whether the parties intended to form binding requirements contracts or performed as if their conduct was governed by enforceable requirements contracts is of no consequence." Appellant's Br. 24. That is, to JRS, "[t]he infirmities in the contracts rendered the contracts unenforceable, and the contracts were only enforceable and binding to the extent actually performed." *Id.*

Basing its arguments on contract law, JRS argues that because the contracts were unenforceable, the four elements of contract law had to be "satisfied for the orders to be binding upon JRS: (1) mutuality of intent to contract i.e., a meeting of the minds regarding the provisions of the agreement; (2) offer and acceptance; (3) consideration; and (4) a Government representative having actual authority to bind the United States." *Id.* at 26–27 (citing *Hometown Fin., Inc. v. United States*, 409 F.3d 1360, 1364 (Fed. Cir. 2005)). JRS contends there was no mutual assent or acceptance, and that "the orders were akin to unilateral purchase orders, or offers to create option contracts." *Id.* at 27.

In *Willard, Sutherland & Co. v. United States*, a case that also involved a contract with the Government, the contract was found to be unenforceable as written, but enforceable as it was actually performed. 262 U.S. 489, 494 (1923) ("While the contract at its inception was not enforceable, it became valid and binding to the extent that it was performed."); *cf Horn v. United States*, 98 Fed. Cl. 500, 504–05 (2011). As explained above, the "Government would provide delivery orders or task orders to JRS requesting services, JRS would render service, and then JRS would invoice the Government for payment."

*Sims*, at 3.  This process demonstrates mutual assent and acceptance.

Finally, as the Court of Federal Claims explained, "[u]nless the contracts are enforceable to some degree, . . . wrongful negative evaluations under the contracts, and the effect of the negative evaluations lack a legal basis." *Sims*, at 8.  Accordingly, this court discerns no error in the court's determination the parties acted as though they were bound by the contracts.

## II. The Court Correctly Determined the Government Was Entitled to Evaluate JRS's Performance

The Court of Federal Claims held that language in the two contracts provided the contracting officer with discretion to prepare PPEs in accordance with FAR Subpart 42.15, which also permitted the BOP to release the evaluations as Source Selection Information.  JRS's original Complaints alleged BOP exceeded the authority of FAR subpart 42.15[2] by creating PPEs, and there was therefore

---

2    FAR § 42.1502 states:

(a) General. Past performance evaluations shall be prepared at least annually and at the time the work under a contract or order is completed. Past performance evaluations are required for contracts and orders for supplies, services, research and development, and contingency operations, including contracts and orders performed inside and outside the United States . . . . These evaluations are generally for the entity, division, or unit that performed the contract or order. . . .

(b) Contracts. Except as provided in paragraphs (e), (f), and (h) of this section, agencies shall prepare evaluations of contractor performance for each contract (as defined in FAR part 2) that ex-

an unlawful unilateral change to the contract. JRS argued to the Court of Federal Claims that "FAR [§] 42.1502 describe[d] the only situations in which a government agency can prepare PPEs (presumably absent contractual

_____

ceeds the simplified acquisition threshold and for each order that exceeds the simplified acquisition threshold. . . .

(c) Orders under multiple-agency contracts. Agencies shall prepare an evaluation of contractor performance for each order that exceeds the simplified acquisition threshold that is placed under a Federal Supply Schedule contract or placed under a task-order contract or a delivery-order contract awarded by another agency . . . .

(d) Orders under single-agency contracts. For single-agency task-order and delivery-order contracts, the contracting officer may require performance evaluations for each order in excess of the simplified acquisition threshold when such evaluations would produce more useful past performance information for source selection officials than that contained in the overall contract evaluation . . . .

 (g) Past performance evaluations shall include an assessment of contractor performance against, and efforts to achieve, the goals identified in the small business subcontracting plan when the contract includes the clause at 52.219-9, Small Business Subcontracting Plan.

(h) Agencies shall not evaluate performance for contracts awarded under Subpart 8.7.

(i) Agencies shall promptly report other contractor information in accordance with 42.1503(h).

authority to do so)," however, the court disagreed, finding contracting officers have broad discretion to create PPEs except in the limited circumstances expressly identified in the FAR. *Sims*, at 9, 11. On appeal, JRS argues "[t]he contracts at issue made no mention of FAR Subpart 42.15, and did not contain a performance evaluation clause that identified performance evaluation factors or evaluation rating definitions that would be used to evaluate JRS's performance." Appellant's Br. 40.

The Court of Federal Claims also determined "[s]everal parts of [FAR subpart 42.15] inform the Court's conclusion that a contracting officer is given discretion to prepare performance evaluations in those circumstances not expressly described in the FAR," *id.* at 11, and this court agrees. FAR § 42.15(a) provides that past performance evaluations shall be prepared at least annually and the evaluations are for the entity that performed the contract or order. Pursuant to FAR § 42.1503(a) and (b), contracting officers consider all relevant sources of information relating to a contractor's performance, and the contractor must be given an opportunity to respond to the evaluations, as happened here. *See* FAR § 42.1503. Contrary to JRS's argument, FAR § 42.1502 does not describe the only situations in which PPEs must or must not be generated. The BOP did not violate FAR subpart 42.15 by preparing performance evaluations that are not mandated by that provision. The Court of Federal Claims correctly concluded that "contracting officers have broad discretion in producing evaluations, except in the limited circumstances discussed in FAR § 42.1502." *Sims*, at 12.

With regard to its argument that the preparation of the PPEs was a unilateral change to the contracts, JRS argues the contracts do not expressly provide for the preparation of evaluations. It also says, since the contracts expressly incorporate FAR § 52.212-4, requiring that any modification to the scope of the contract "may be made only by written agreement of the parties," the

Government breached the contract. Both the Ceramic and Parenting Contracts have a clause stating: "[t]he [contracting officer's technical representative] is responsible, as applicable, for . . . *evaluating performance.*" *Sims*, at 12 (emphasis added). "This is the *only* language in either contract that refers to performance evaluations, and it certainly does not place a duty upon the BOP *not* to prepare evaluations." *Id.*

JRS nevertheless argues this clause allows the contracting officer's technical representative, not the contracting officer, to create performance evaluations. JRS offers no support for this semantic distinction and we afford this argument no weight. Furthermore, JRS offers no other persuasive evidence for why BOP was prohibited from evaluating JRS under FAR subpart 42.15. Thus, because the BOP did not exceed its authority under FAR subpart 42.15, there was no unilateral change to the contract.

III. The Court Correctly Determined the Government Did Not Breach the Covenant of Good Faith and Fair Dealing

JRS argued to the Court of Federal Claims that "[b]y failing to provide [JRS] with a fair and accurate assessment of its performance, Defendant breached [] the covenant of good faith and fair dealing by depriving Plaintiff of the reasonable expectation of having its performance fairly[] and accurately evaluated." J.A. 34. "In essence, this duty requires a party to not interfere with another party's rights under the contract. The United States, no less than any other party, is subject to this covenant." *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 828 (Fed. Cir. 2010) (citations omitted).

The Court of Federal Claims held that "JRS has failed to demonstrate anything in the Government's actions that breach the implied duty of good faith and fair dealing or otherwise demonstrate that the BOP's evaluations were arbitrary or capricious." *Sims*, at 13.

JRS contends the court should have applied a "preponderance of the evidence" standard, rather than a "clear and convincing evidence" standard, and improperly required JRS to show bad faith. This is incorrect. The court found JRS was unable to show "the BOP's evaluations were arbitrary or capricious," *id.*, and explained "the only evidence before the Court shows the parties entered into a pair of contracts that, while unenforceable, were not treated as such." *Id.* The court then evaluated the evidence and found a complete lack of a breach on the Government's part. This was not error. Here, JRS provides no substantive evidence that the Government breached the contract.

JRS also argues that "[i]n preparing erroneous [PPEs] that included low ratings and negative comments about JRS's performance, the BOP failed to provide JRS with fair and accurate evaluations. The evaluations were based upon the false premise that the contracts were enforceable, and that JRS was required to furnish all requested services." Appellant's Br. 36. As described above, the parties acted as though they intended to be bound by the contract.

Finally, though the PPEs did address JRS's failure to provide services, JRS *did not* provide the services when it received a valid task order. JRS did not raise the unenforceability argument when it had the chance to respond to the PPEs, but contended its subcontractors were unable to perform. "We have previously explained that a contractor is responsible for the unexcused performance failures of its subcontractors." *Todd Constr., L.P. v. United States*, 656 F.3d 1306, 1316 (Fed. Cir. 2011) (internal quotation marks and citation omitted). Accordingly, the Court of Federal Claims correctly determined the Government did not breach the covenant of good faith and fair dealing.

JACQUELINE R. SIMS V. UNITED STATES

17

## CONCLUSION

For the foregoing reasons, the judgment of the Court of Federal Claims is

**AFFIRMED**